(No. 107416.—

HONORABLE WILLIAM D. MADDUX *et al.*, Appellants, v. ROD R. BLAGOJEVICH, Governor, State of Illinois, *et al.*, Appellees.

*Opinion filed June 18, 2009.*

510

David A. Novoselsky and Brian A. Schroeder, of Chicago, for appellants.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Paul Berks, Assistant Attorney General, of Chicago, of counsel), for appellees Illinois State Board of Elections and Its Members.

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Kilbride and Burke concurred in the judgment and opinion.

Justice Karmeier dissented, with opinion, joined by Justice Garman.

Justice Thomas took no part in the decision.

## OPINION

Plaintiffs, Cook County Circuit Court Judge William D. Maddux and five Cook County voters eligible to vote in judicial elections, sought a declaration from the circuit

court of Cook County that the Compulsory Retirement of Judges Act (Retirement Act or Act) (705 ILCS 55/1 *et seq.* (West 2006)) is unconstitutional. The circuit court dismissed the complaint. Plaintiffs filed a notice of appeal to the appellate court, and then filed a motion to transfer to this court pursuant to Supreme Court Rule 302(b). See 210 Ill. 2d R. 302(b) (requiring, if in the public interest, prompt adjudication by the Illinois Supreme Court). We allowed the motion and ordered that the appeal be taken directly to this court. 210 Ill. 2d R. 302(b). For reasons that follow, we reverse the judgment of the circuit court.

## BACKGROUND

Plaintiffs' complaint challenged the constitutionality of the Retirement Act on a number of grounds, including that it impermissibly imposes limitations on the judicial retention process in violation of article VI, section 12(d), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, §12(d)). Plaintiffs named as defendants the Governor of Illinois,[1] the members of the Illinois State Board of Elections and the Cook County clerk. The defendant Governor moved to dismiss the complaint under section 2—619(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(1) (West 2006)), claiming that there was no actual controversy between himself and the plaintiffs. The Board defendants moved to dismiss under section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)), on the ground that the complaint failed to state a claim that the Act is unconstitutional. Plaintiffs moved for summary judgment, relying solely on the facts alleged

---

[1]Plaintiffs' complaint named Rod Blagojevich as a defendant in his capacity as Governor of the State of Illinois. Blagojevich was removed from office on January 29, 2009, and Patrick Quinn was sworn in as Governor. Pursuant to section 2—1008(d) of the Code of Civil Procedure (735 ILCS 5/2—1008(d) (West 2006)), plaintiffs' action now proceeds against Governor Quinn.

in the complaint and claiming they were entitled to judgment as a matter of law.

Plaintiffs' complaint alleged that Judge Maddux is currently the presiding judge of the law division of the Cook County circuit court. He was first appointed a circuit judge in 1991 and was subsequently elected as a circuit judge in 1992. He was later retained by the voters as a circuit judge in the 1996 and 2002 elections. His current term expires in 2010. Judge Maddux will be 75 years old by the date his term expires and will, at that time, be subject to the Retirement Act's provisions. In an amendment to their complaint, plaintiffs alleged that Judge Maddux intends to run for retention should the Act be invalidated, but will not run in a contested election should the Act be upheld.

The circuit court filed a memorandum opinion and order, granting the defendants' motions to dismiss and denying plaintiffs' motion for summary judgment. The court dismissed the case in its entirety with regard to all defendants.[2] In so doing, the circuit court determined that it was bound to accept the "judicial gloss" placed on the Retirement Act by the First District's decision in *Anagnost v. Layhe*, 230 Ill. App. 3d 540 (1992). The circuit court noted that *Anagnost* had construed the Act as preventing a judge from running in a retention election after the expiration of the term in which the judge attains the age of 75, but allowing a judge to run for judicial office in a contested election, regardless of any age limitation. The circuit court concluded that there was no basis to conclude that the Retirement Act amounted to a constitutionally unauthorized modification of the retention process, as the text and history of the judicial article

---

[2]The circuit court found that it had subject matter jurisdiction over the action against the Governor, but that the complaint failed to state any claim for relief.

of the Illinois Constitution support the constitutionality of the Act as interpreted by *Anagnost.*

## ANALYSIS

The dismissal of a complaint is reviewed *de novo. People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 120 (2001).

This case turns on the meaning of the Retirement Act and whether its operation is consistent with our state constitution.

The Retirement Act provides:

> "A judge is automatically retired at the expiration of the term in which the judge attains the age of 75. Such judge shall conclude all matters pending before him unless the Supreme Court makes other provisions for the disposition of such matters. This Section shall apply to all Supreme Court, appellate, circuit and associate judges." 705 ILCS 55/1 (West 2006).

As in all cases of statutory construction, our goal is to ascertain and give effect to the intent of the General Assembly in passing the Act, and the enacted language is generally the best evidence of that. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). We may also consider the purpose behind the Act and the evils sought to be remedied, as well as the consequences that would result from construing it one way or the other, a critical consideration for this case. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 604 (2008).

The Act states that a judge is "automatically retired" at the expiration of the term in which he attains the age of 75. The word "retired" is modified by the adverb "automatically." Thus, the Act makes clear that, once a judge reaches the age of 75 while still serving a judicial term of office, the termination of work is not left to choice. Giving the language its plain and ordinary meaning, as we must (*People v. Roos*, 118 Ill. 2d 203, 210 (1987)), the Act dictates that a judge who turns 75 at any point during his term must cease to be employed as a

judge at the conclusion of that term. The verb "retired" in this context means *permanent* termination of employment as a judge. See Webster's Third New International Dictionary 1939 (1986) (defining "retire" as to withdraw from "active duty"); Black's Law Dictionary 1317 (7th ed. 1999) (defining "retirement" as the termination of one's "employment or career"). We therefore conclude that, under the Act's plain language, mandatory, permanent retirement is required for all judges at the expiration of the term in which they reach age 75.

The circuit court, following the construction of the Act offered in *Anagnost v. Layhe*, 230 Ill. App. 3d 540 (1992), interpreted the Act in a manner that departs considerably from its plain language. As we explain, however, that construction does not effectuate the purpose behind it and cannot stand.

In *Anagnost*, the appellate court construed the Act to bar sitting judges from seeking retention of their seats once they reach the age of 75 within a term, but not from seeking election. The case involved a 75-year-old licensed attorney who sought the nomination for the office of supreme court justice. The defendants challenged his nominating petitions on the basis that he was ineligible for office under the Act because he was too old. The attorney challenged the constitutionality of the Act, arguing that the legislature lacked authority to prohibit persons 75 years old or older from running for judicial office. The appellate court recognized the difficult constitutional question that the case presented. *Anagnost*, 230 Ill. App. 3d at 542-43. On the one hand, the court acknowledged the long line of authority which prevents the legislature from adding to the qualifications for judicial office, as specified in section 11 of the judicial article.[3] *Anagnost*, 230 Ill. App. 3d at 542. On the other

---

[3]Under section 11 of the judicial article, to be eligible to run for judicial office a person must be a citizen, an attorney, and a

hand, the court observed that section 15(a) of that article[4] expressly authorized the legislature to fix a mandatory retirement age for judges. *Anagnost,* 230 Ill. App. 3d at 542.

Ultimately, the appellate court did not reach the constitutional question. *Anagnost,* 230 Ill. App. 3d at 542-43. Instead, it resolved the case by construing the Act as not barring a "person over the age of 75[,] and otherwise qualified to serve as a judge from running in a judicial election." *Anagnost,* 230 Ill. App. 3d at 544. The court noted that the "language of the Judges Act leaves little room for an interpretation that it is applicable to any one [*sic*] other than sitting judges." *Anagnost,* 230 Ill. App. 3d at 544. It also noted the difference between an adversarial election and the retention process. *Anagnost,* 230 Ill. App. 3d at 543-44. Although the court held that a citizen 75 years or older was eligible to run for judicial office, the effect of its holding on sitting judges was that a judge retired under the Act could yet run for election.

Justice Jiganti, in dissent, correctly recognized that the majority's holding was that "a judge may seek election beyond retirement age but not retention." *Anagnost,* 230 Ill. App. 3d at 546 (Jiganti, J., dissenting). He noted that while there arguably may be a difference between seeking election and seeking retention, holding that a judge beyond retirement age may seek election but not retention brought about an absurd result. *Anagnost,* 230 Ill. App. 3d at 546 (Jiganti, J., dissenting).

In this case, both parties see in *Anagnost* reason to consider whether legislative acquiescence, a canon of

---

resident of the district in which the judicial seat is being sought. Ill. Const. 1970, art. VI, §11.

[4]Section 15(a) states that the "General Assembly may provide by law for the retirement of Judges and Associate Judges at a prescribed age." Ill. Const. 1970, art. VI, §15(a).

statutory construction, controls the question of the Act's interpretation. They acknowledge that in the time since *Anagnost* was decided, the General Assembly has taken no action to amend the Act. We need not, however, belabor these arguments. Legislative acquiescence is a "jurisprudential principle; it is not a rule of law." *People v. Perry*, 224 Ill. 2d 312, 331 (2007). More importantly, the General Assembly cannot acquiesce to a construction that is at odds with the constitution, and the construction that finds support in *Anagnost* cannot be harmonized with the constitutional mandate of section 15(a).

The Attorney General, recognizing that this case differs factually from *Anagnost*, nevertheless argues that the circuit court correctly applied *Anagnost*'s construction in this case. The Attorney General reasons as follows. If a judge turns 75 during his term in office, then his seat becomes vacant automatically at the conclusion of that term. The seat being vacant, it cannot be retained because the judge would be ineligible to run for retention. The judge would thus be effectively retired. The Attorney General sees nothing in the Act, however, that would preclude that same judge, so "retired" by the Act's operation, from running for a judicial seat in an open[5] election, including the very one that the judge was "retired" from.

This interpretation, referred to by both parties as the "*Anagnost* gloss,"[6] departs in no small way from the Act's plain language. Specifically, the Act draws no

---

[5]The term "open" election is used here to describe the primary and general election process, including contested and uncontested races, as distinguished from the judicial retention process.

[6]The use of the term "gloss" is not especially helpful to our discussion. *Anagnost* did not address the questions that arise under the Act as it relates to a sitting judge. The plaintiff there was a 75-year attorney who wanted to run in the general election for an open judicial seat. The court held that the plaintiff could run for the seat because the 75-year old age restriction pertained only to

distinction between retention elections and open elections. It is, of course, "never proper for a court to depart from plain language by reading into a statute exceptions, limitations, or conditions." *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999). Yet, adding language is exactly what the Attorney General's construction does. The Act says nothing about retention or about the ability to avoid permanent retirement by simply running in an open election. It provides only that a judge is automatically retired at the end of the term in which he turns 75.

This construction, moreover, would disqualify by age sitting judges who would seek retention, but not those sitting judges retired by the Act's operation who would seek election. Such a construction is not supported by the actual language of the Act, which purports to retire *all* judges. And, it is critical to point out that providing for the mandatory retirement of judges was the *only* thing that the General Assembly may do under section 15(a). We have long acknowledged that the intent of the drafters in section 15(a) was to have the legislature designate an age beyond which a judge could no longer hold office. *Cusack v. Howlett*, 44 Ill. 2d 233, 244 (1969) (construing 1964 amendment to the judicial article of the Constitution of 1870, the precursor to the current judicial article, as granting to the General Assembly the authority to fix a "mandatory" retirement age for judges); see also 2 Record of Proceedings, Sixth Illinois Constitutional Convention 1089 (Delegate Rachunas noting that the proposal for the 1970 Constitution deals with the "automatic retirement for age *** of judges). See also G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 375 (1969) (noting that

---

sitting judges who sought retention, not election. Thus, the holding is not a "gloss," it is simply one interpretation of the Act.

drafters of section 15(a) sought to establish an age at which a judge could no longer hold office).

More importantly, and as Justice Jiganti recognized in his dissent in *Anagnost*, under this construction, mandatory retirement is easily avoided by running in an open election for a judicial seat, including the one made vacant by the Act's operation. Thus, under this construction, the Act does not provide for mandatory retirement at all. The only judges retired under this construction would be those who choose to be. This entirely undermines the notion of a mandatory retirement based on age. Consider, for example, a 76-year judge, who is "retired" by virtue of attaining the age of 75 during his term. That person could still run for, and be elected to, the same seat he vacated by operation of the Act. Moreover, if elected, that judge, beginning his term at an age older than 75 would thus be *immune* from the Act altogether. That judge would never "attain" 75 within a judicial term. 705 ILCS 55/1 (West 2006). The Act could not prevent the judge from seeking retention in six years (as a circuit court judge) or ten years (as an appellate or supreme court justice).[7] The not unlikely possibility of a person older than 75 running for judicial office[8] defeats the intent of section 15(a) of the judicial article, which

---

[7]This same scenario is also possible for associate judges, who are first elected by the circuit court judges to a four-year term and then subject to retention thereafter.

[8]The history of the Act demonstrates that with advanced medical technology fostering longer life, people are able to work longer. The most recent amendment to the Act, which increased the age of judicial retirement from 70 to 75, was intended, *inter alia*, to make Illinois law consistent with federal law. 82d Ill. Gen. Assem., House Proceedings, May 14, 1981, at 221-22. In 1986, Congress amended the Age Discrimination in Employment Act of 1967 (29 U.S.C. §621 *et seq.*) to increase age limits for mandatory retirement in certain professions and to completely eliminate them in others, due, in part, to the increased life expectancy of workers in light of improved medical advances. S. Han & P. Moen, *Clocking*

purports to provide for mandatory judicial retirement based on age.

Thus, under the *Anagnost* construction, the Act does not achieve mandatory retirement at all. It is, in effect, nothing but an anti-retention provision.[9] A judge disqualified by age from running for retention, yet able to hold a judicial seat, even the one he was retired from, via an open election is, in no sense of the word, "retired." As such, the Act, so construed, fails to fulfill the constitutional mandate of compulsory retirement.

The appellate court in *Anagnost*, and the circuit court here, stated that their interpretation of the Act was reasonable given that the distinction between retention elections and open elections provides a means for voters to assess the fitness of 75-year "retired" judges to again hold office. The point is not relevant for constitutional analysis, but the logic is nevertheless flawed, as we explain below.

Nothing in section 15(a) expressly links age-based mandatory retirement to fitness. While infirmities of age might have been the concern of the drafters of section 15(a), it is also possible that they sought to preclude life tenure for judges, which, at the time, some viewed as having been made possible through the retention process.[10] As we have pointed out, under the interpretation in *Anagnost*, a judge can avoid the effect of being retired

---

*Out: Temporal Patterning of Retirement*, Am. J. of Soc., at 193 (July 1999).

[9]Had the drafters of the constitution intended to base retention eligibility on age, they could easily have stated, in section 12(d), that the General Assembly may prescribe an age at which a judge could no longer seek retention.

[10]The judicial article of the 1870 Constitution was amended in 1964. At that time, retention elections were introduced as part of the constitutional reform of the state judiciary. Retention elections are seen as a way of providing judicial independence that, it is argued, cannot be achieved through partisan elections. See G. Bra-

simply by running again, even for the same seat made vacant by his "retirement." This obviously thwarts the intent to keep someone from sitting on the bench for life.

The concern with limiting judicial tenure through retirement by age might explain why, in sections 15(c) and (e), the judicial article provides an explicit procedure for the removal of a judge for reasons of unfitness. Ill. Const. 1970, art. VI, §§15(b), (c), (e). Section 15(c) creates a Judicial Inquiry Board empowered to charge a judge or associate judge with being "physically or mentally unable to perform his [or her] duties." Ill. Const. 1970, art. VI, §15(c). Section 15(e) creates a Courts Commission empowered to "retire" a judge who is "physically or mentally unable to perform his or her duties." Ill. Const. 1970, art. VI, §15(e).

Nevertheless, there is some evidence to support the appellate court's conclusion that fitness *was* the concern behind the mandatory retirement provision contained in section 15(a). The legislative history of the Act, whose original passage predated section 15(a) of the 1970 Constitution,[11] shows that some legislators believed that age-based mandatory retirement "will tend to insure a more vigorous judiciary to which the public is entitled." Report of the Judicial Advisory Council of Illinois 9-10 (June

den & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 356-58 (1969) (explaining competing methods of selecting judges considered during the 1964 amendment process). The question of how to select judges arose again during consideration of the 1970 Constitution. See G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 359 (1969) (noting volatile nature of the issue). There is evidence that lifelong tenure was a constitutional concern in light of the fact that the 1970 Constitution retained, from the 1964 amendment, the use of retention elections. G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 360-61 (1969).

[11]The 1964 amendment of the 1870 Constitution first incorporated a mandatory retirement provision into the judicial article.

1963) (submitted to the Governor and the Seventy-Third General Assembly of the State of Illinois).[12] The drafters of the 1970 Constitution knew of this legislative history and retained the concept of mandatory age-based retirement in the judicial article. G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 375 (1969).

But the legitimate interest in "a more vigorous judiciary" is not realized under the construction of the Act advanced by the appellate court in *Anagnost*. Once again, under that construction, a judge precluded from retaining his seat may nevertheless hold judicial office via an open election, including the very seat he was "retired" from. If the drafters of the constitution *were* concerned about the infirmities of age, that concern would exist for *any* person 75 and older. Logically, the same disqualification based on the infirmities of age could logically apply to both those who would seek *either* retention *or* election.[13] Such inconsistent treatment cannot rationally be tied to the method of election; either age

---

[12]In 1950, the amendment process to the Illinois Constitution was liberalized, and as a result, many groups focused on the need for constitutional reform to the judicial article. See G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 327 (1969) (explaining the history of the judicial article). After a joint committee of the Illinois State and Chicago Bar Associations prepared a draft of a proposed new article, the General Assembly created a legislative commission to study the needs for constitutional reforms and to evaluate the proposals and recommendations that were being made. G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 327-28 (1969). The Judicial Advisory Council's version of 1957 was eventually adopted by the General Assembly in 1962; it amended the 1870 Constitution effective January 1, 1964. G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 328 (1969).

[13]The legislative history from the Act's last amendment tends to support the conclusion that the General Assembly intended to

determines the ability to hold judicial office or it does not.

In light of the foregoing, we hold that the circuit court in this case and the appellate court in *Anagnost* erred in construing the Act as they did. The *Anagnost* interpretation is not supported by the plain language of the Act and, more problematically, does not achieve the constitutional mandate of compulsory judicial retirement contemplated by section 15(a). Accordingly, *Anagnost* is overruled.

Having overruled *Anagnost*, we return to the plain language of the Act for purposes of assessing plaintiffs' arguments. As we have noted, that language compels mandatory retirement for all judges at the expiration of the term in which they attain the age of 75.

Plaintiffs contend that section 15(a) does not authorize the General Assembly to enact mandatory judicial retirement legislation, but the argument lacks merit. The constitution operates as a limitation upon the General Assembly's sweeping authority, not as any grant of power (see *City of Chicago v. Holland*, 206 Ill. 2d 480, 489 (2003)); thus the General Assembly is free to enact any legislation that the constitution does not expressly prohibit (*Cincinnati Insurance Co. v. Chapman*, 181 Ill. 2d 65, 78 (1998)). Nevertheless, where the constitution specifically addresses the power of the General Assembly to enact particular legislation, basic principles of constitutional and statutory interpretation still apply.

---

select an age beyond which a judge could no longer serve as a judge. See 85th Ill. Gen. Assem., Senate Proceedings, November 29, 1988, at 14-15 (statements of Senator Berman) ("I cannot run again if I'm over seventy-five, *** this brings a little justice and age fairness to the judiciary"); 82d Ill. Gen. Assem., House Proceedings, April 22, 1981, at 40 (statements of Representative Beatty) ("judges can be judges til they're 75"). These comments underscore the notion that the retirement contemplated in section 15(a) was meant to be permanent in nature.

*Holland*, 206 Ill. 2d at 489. The court must ascertain the plain and ordinary meaning of the relevant constitutional and statutory provisions in the constitutional and legislative contexts in which they appear. *Holland*, 206 Ill. 2d at 489. The constitution must be read and understood according to the most natural and obvious meaning of the language in order to avoid eliminating or extending its operation. *Austin v. Healy*, 376 Ill. 633, 636 (1941). Where the words of the constitution are clear, explicit, and unambiguous, there is no need for a court to engage in construction. *City of Beardstown v. City of Virginia*, 76 Ill. 34, 40 (1875).

Section 15(a) of the 1970 Constitution states that the General Assembly "may provide by law for the retirement of Judges and Associate Judges at a prescribed age." Ill. Const. 1970, art. VI, §15(a). The use of "may" indicates that the drafters intended to allow the General Assembly permissive power, which it may choose to exercise or not, to enact mandatory retirement legislation. See *In re Marriage of Freeman*, 106 Ill. 2d 290, 298 (1985) (stating that, except in unusual circumstances, the use of "may" connotes permissiveness); *People v. Siler*, 85 Ill. App. 3d 304, 310 (1980) (noting use of "may" in the constitution denotes discretion).[14] The word "prescribe" means "to order" or "direct." The provision

---

[14]That the drafters intended for flexibility regarding whether to legislate age-based mandatory judicial retirement is unremarkable. At the time of the 1970 Constitution, only about half of the states had constitutional provisions concerning the retirement of judges. G. Braden & R. Cohn, The Illinois Constitution: An Annotated & Comparative Analysis 375 (1969). Moreover, views on mandatory retirement based on age were beginning to evolve given Congress' enactment of the Age Discrimination in Employment Act of 1967, whose express purpose was to promote "employment of older persons based on their ability rather than age." 29 U.S.C. §621(b) (2006). It is perhaps for this reason that a mandatory retirement age was not established in the body of section 15(a), as

thus plainly allows the General Assembly to enact legislation regarding mandatory retirement of judges based on age if it so chooses. Moreover, as we have explained, the conclusion that section 15(a) intended for any such legislation to be mandatory is consistent with both case law and the constitutional debates. See *Cusack*, 44 Ill. 2d at 244; 5 Proceedings 3958.

In acting pursuant to section 15(a) of the judicial article, the General Assembly created in the Act a scheme that declares a vacancy in the office of a judge at the expiration of the term in which that judge reaches the age of 75. See *Tully v. State of Illinois*, 143 Ill. 2d 425 (1991) (noting, in passing, that a seat becomes vacant upon compulsory retirement under the Act). That the Act renders the seat "vacant" is consistent with section 12(b) of the judicial article, which provides that a judicial office "shall be vacant upon [the judge's] death, resignation, retirement, removal, or upon the conclusion of [the judge's] term without retention in office." Ill. Const. 1970, art. VI, §12(b). Thus, plaintiffs' contention that the General Assembly lacks authority to enact legislation such as the Act is without merit. The question that remains is whether this particular legislative scheme conflicts, as plaintiffs also maintain, with other provisions of the constitution.

Although giving effect to the Act's plain language obviously fulfills the constitutional goal of mandatory retirement, it raises other constitutional problems that cannot be remedied simply by statutory construction or constitutional interpretation. As already pointed out, section 11 of the judicial article establishes only three criteria for eligibility to be a judge. These do not include

---

the drafters intended for the issue to be left to the discretion of the General Assembly, which could easily amend or repeal such laws over time.

either a minimum or maximum age.[15] As a result, *all* citizens who meet these criteria are eligible to be a candidate for judicial office. The Act would preclude a class of people, former judges who become 75 within their term, from running for vacant judicial seats in open elections. This causes constitutional concerns because other citizens, not in that class, can run in open elections for judicial office.

Consider the situation of a 76-year-old citizen who has never held judicial office. If that person runs for judicial office and wins, he would *never* face the prospect of compulsory retirement because, under the Act's operation, automatic retirement occurs "at the expiration of the term in which the judge attains the age of 75." 705 ILCS 55/1 (West 2006). There would never be a "term in which" such a judge would "attain[ ] the age of 75." 705 ILCS 55/1 (West 2006). (The same would, of course, be true for a judge who left judicial office before turning 75, who then ran for election after turning 76.) The successful candidate in this scenario would fall outside the statute's language and would be eligible for retention at the conclusion of the term. Mandatory retirement would exist for some, but not all, judges because there would exist a class of judges who would be immune from the mandatory retirement envisioned under section 15(a).

The Act, therefore, does nothing to advance the goal of insuring a "more vigorous judiciary" since it would allow for people older than 75 years to serve terms of 6 and possibly 10 years. More importantly, the Act creates an irrational classification that could not, in terms of equal protection, withstand scrutiny under our state constitution. Equal protection requires that similarly

---

[15]Both the 1848 and the 1870 constitutions contained minimum age qualifications. The age qualifications were eliminated when the 1870 constitution was amended in 1964. Our state constitution has never contained an maximum age qualification.

situated individuals will be treated similarly unless the government can demonstrate an appropriate reason to do otherwise. *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 466 (2004); *People v. Donoho*, 204 Ill. 2d 159, 176-77 (2003). In cases like this one, where the statutory classification at issue does not involve fundamental rights, courts employ "rational basis scrutiny" to determine whether the classification bears a rational relation to a legitimate purpose. *In re Detention of Samuelson*, 189 Ill. 2d 548, 562 (2000).

There is no rational basis upon which the legislature can prevent 75-year-old or older *former judges* from running in an election, but not citizens 75 years old or older *who were never judges* when the disqualifying characteristic is age. If the legitimate state interest is to insure a "vigorous judiciary," the classification we describe above cannot be deemed rationally related to that purpose. We stress again that if age defines ability (and both the constitutional and legislative history indicate that it was believed that it does), either *all* those 75 years of age or older are unfit or they are not. No presumption of constitutionality could save legislation like this that so blatantly violates equal protection. See *People v. Nastasio*, 19 Ill. 2d 524, 529 (1960) (explaining courts' duty to avoid interpretations that raise constitutional questions and cast doubt on validity).

The Attorney General, perhaps anticipating the constitutional problems arising from the Act's plain language, suggests that sections 11, 12, and 15 of the judicial article can be read together as an implicit grant of authority to the legislature to create additional eligibility factors pertaining to age for judges.[16] In other words, because section 15(a) mandates retirement at a certain

---

[16]Indeed, in response to questioning on this point, the Attorney General proffered at oral argument an interpretation at a bit of a variance from the plain language of the Act: no person

age, the constitution implicitly authorizes that age to be considered as a kind of *de facto* eligibility criterion with respect to sections 11 and 12. This argument is rooted in the notion that if such implicit authorization is not read into the judicial article, this court would, in effect, be reading out of the constitution section 15(a)'s allowance for mandatory retirement.

Such an analysis, however, departs from the text of the constitution. Statutory constructions based on looking beyond the text of a statute are disfavored since a court has no authority to depart from the law's plain meaning or alter its language in a "way that constitutes a change in the plain meaning of the words actually adopted by the legislature." *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 346 (2005). The same is true in construing constitutional provisions, perhaps even more so given that the language in question was what was presented to the citizens who voted to approve it.

To interpret the constitution in the manner suggested by the Attorney General is especially problematic because, as we have stated, the constitution acts as a limitation on the General Assembly's authority. In section 15(a), the drafters gave the legislature the discretion to enact judicial retirement legislation. Section 11 acts as a limitation on the General Assembly to add to the eligibility of citizens to run for judicial office. We cannot, merely because of section 15(a), read into section 11 an additional eligibility criterion that would impair the rights of people who have never been judges to run for

---

may seek a judicial office if that person is older than 75. The problem with this interpretation is that, as noted, section 11 of the judicial article does not provide for either an age floor or ceiling. Thus, under this interpretation, the legislature has improperly added a qualification to section 11 that is not present in the constitutional text. As such, it would violate section 11. See *Thies v. State Board of Elections*, 124 Ill. 2d 317, 325 (1988); *People ex rel. Nachman v. Carpentier*, 30 Ill. 2d 475, 478 (1964).

judicial office. In other words, section 15(a), which allows only for the General Assembly to exercise discretion over judicial retirement, cannot be considered a grant of authority to the legislature over matters other than judicial retirement. The constitution acknowledges that the General Assembly may provide for the retirement of judges, which it sought to do under the Act. As it turns out, in doing so, the particular statutory mechanism that the legislature enacted runs afoul of various constitutional principles. We cannot read words into our constitution in order to save problematic legislation.

Legislation is presumed constitutional and must be construed as not offending the constitution, provided, of course, that the construction is reasonable. *Gill v. Miller*, 94 Ill. 2d 52, 56 (1983). This presumption, however, is only the starting point in constitutional analysis; it is not outcome determinative. Thus, notwithstanding a statute's presumption of constitutionality, this court has acknowledged its "power to strike down" legislation when it is "violative of the clear requirements of the constitution." *Donovan v. Holzman*, 8 Ill. 2d 87, 93 (1956). This court has long acknowledged its "duty to interpret the law and to protect the rights of individuals against acts beyond the scope of the legislative power." *People ex rel. Huempfner v. Benson*, 294 Ill. 236 (1920). If a statute is unconstitutional, courts are obligated to declare it invalid. *Wilson v. Department of Revenue*, 169 Ill. 2d 306, 310 (1996). This duty cannot be evaded or neglected, no matter how desirable or beneficial the legislation may appear to be. *Wilson*, 169 Ill. 2d at 310; *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 190 (1952).

As we have explained, the judicial article allows for the General Assembly to enact mandatory judicial retirement legislation; however, the plain language of the specific legislation that has been enacted pursuant to the constitution violates equal protection. Moreover, as it is

written, it allows certain judges to avoid mandatory retirement. This court is mindful that restraint is called for when presented with challenges to the constitutionality of legislation enacted pursuant to a specific grant of constitutional authority. But we cannot be reluctant to invalidate legislation that either goes beyond the specific grant of authority or is otherwise inconsistent with our constitution, as we have demonstrated in the past. For example, our state constitution requires the legislature to provide by law for four judicial districts outside of Cook County "of substantially equal population." Ill. Const. 1970, art. VI, §2. This court has repeatedly struck down legislative attempts to meet this constitutional mandate. See *Cincinnati Insurance Co. v. Chapman*, 181 Ill. 2d 65 (1998); *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513 (1990). As Justice Ryan astutely noted in his special concurrence in *State Board of Elections*,

> "[T]his court, the legislature and the executive are bound by the limitations of the constitution. No matter how politically or socially desirable a piece of legislation may be, if it is contrary to the provisions of our constitution, it cannot stand. Possibly, this court is more conscious of constitutional restrictions than are the other branches of our State government because we must constantly square our holdings with the constitution, whereas the legislative and executive branches must often measure their positions by social and political concerns. Nonetheless, the final product of those branches must stand the constitutional test." *State Board of Elections*, 136 Ill. 2d at 539 (Ryan, J., specially concurring).

These observations are particularly apt in this case.

Finally, the circuit court here correctly observed that the General Assembly "must navigate" with "precision" in this area given the tensions that exist in the judicial article between having no age ceiling for eligibility in section 11 and allowing for age-based mandatory retirement in section 15(a). The court noted that "the quan-

dary" arises not from the language of the Act, but rather "finds its source in the structure of the judicial article."

It may well be that the route to mandatory retirement for judges lies in constitutional amendment.[17] Such concerns, however, are beyond the scope of this opinion. Our duty in this case is limited to assessing the constitutionality of the Act as it currently exists, not to redraft it. We have determined that the Act as written is unconstitutional. It is, of course, the General Assembly's prerogative, under section 15(a), to attempt to reenact mandatory judicial retirement legislation. Our holding today recognizes this authority. It is also fair to acknowledge, however, the difficulty in exercising that discretion where retirement is linked to age absent a corresponding constitutional age ceiling in section 11 which would disqualify a person from running for judicial office.

## CONCLUSION

In light of the above, the Act is declared unconstitutional and the order of the circuit court is reversed.

*Reversed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE KARMEIER, dissenting:

The Compulsory Retirement of Judges Act (the Retirement Act) (705 ILCS 55/1 *et seq.* (West 2006)) provides in relevant part that "[a] judge is automatically retired at the expiration of the term in which the judge attains the age of 75." 705 ILCS 55/1 (West 2006). The

---

[17]The drafters of our constitution wisely allowed for routine amendment. The current constitution is our fourth, and it, itself, provides for its own amendment in article XIV. Illinois citizens are empowered to call for change; the Constitution specifically allows for the question to be brought up every 20 years. Ill. Const. 1970, art. XIV, §1(b).

issue in this case is whether the Retirement Act exceeds the authority conferred on the General Assembly by the Illinois Constitution to prescribe a retirement age for judges. For the reasons that follow, I would hold that the Retirement Act, as it has been interpreted by Illinois case law, comports with the Constitution and is valid. I therefore respectfully dissent.

As described in the majority's opinion, plaintiffs are a Cook County circuit court judge named William D. Maddux and five Cook County voters who are eligible to vote in judicial elections and would like to vote to retain Judge Maddux in office. Plaintiffs filed a declaratory judgment action in the circuit court of Cook County challenging the constitutionality of the Retirement Act on a number of grounds, including that it impermissibly imposes limitations on the judicial retention process in violation of article VI, section 12(d), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, §12(d)). Plaintiffs named as defendants the Governor of Illinois, the members of the Illinois State Board of Elections and the Cook County clerk. The defendant Governor moved to dismiss the complaint under section 2—619(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a) (West 2006)), claiming that there was no actual controversy between himself and the plaintiffs. The Board defendants moved to dismiss under section 2—615 of the Code (735 ILCS 5/2—615 (West 2006)), on the ground that the complaint failed to state a claim that the Act is unconstitutional. Plaintiffs moved for summary judgment, relying solely on the facts alleged in the complaint and claiming they were entitled to judgment as a matter of law.

According to plaintiffs' complaint, Judge Maddux currently serves as presiding judge of the Law Division of the Cook County circuit court. Plaintiffs allege that Judge Maddux was first appointed circuit judge in 1991 and was subsequently elected to that post in 1992. He

won retention to the office in 1998 and then again in 2004.[18] His current term expires in 2010. By that time, Judge Maddux will be 75 years old and will therefore be subject to the Retirement Act's provisions. In an amendment to their complaint, plaintiffs alleged that Judge Maddux intends to run for retention should the Act be invalidated, but will not run in a contested election should the Act be upheld.

The circuit court issued a memorandum opinion and order granting the defendants' motions to dismiss and denying plaintiffs' motion for summary judgment. The court dismissed the case in its entirety with regard to all defendants. In so doing, the circuit court correctly recognized that it was bound to accept the interpretation placed on the Retirement Act by the First District's decision in *Anagnost v. Layhe*, 230 Ill. App. 3d 540 (1992). That decision construed the Retirement Act as barring a judge from seeking retention after the expiration of the term in which the judge attained the age of 75, but permitting him or her to run for judicial office in contested elections no matter how old he or she may be. The circuit court believed that the text and history of the judicial article of the Illinois Constitution supported the constitutionality of the Act as interpreted by *Anagnost*. It therefore rejected the claim that the Retirement Act had modified the retention process in a manner not authorized by our state's constitution.

Plaintiffs appealed. After the matter was docketed in the appellate court, plaintiffs moved to transfer the cause to our court pursuant to Supreme Court Rule 302(b) (210 Ill. 2d R. 302(b)) on the grounds that the public interest

---

[18]The complaint actually alleged that Judge Maddux was retained in 1996 and 2002, but this was obviously an error. The correct years, noted here, were obtained from this court's own records, of which we may take judicial notice.

required prompt adjudication by this tribunal. We granted plaintiffs' motion.

Here, as in the circuit court, the central issue is whether the Retirement Act is unconstitutional because it exceeds the authority given to the General Assembly by the Illinois Constitution to prescribe a retirement age for judges. The standards governing our review are familiar. The constitutionality of a statute is a question of law we review *de novo. Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 661 (2005). All statutes carry a strong presumption of constitutionality, and it is the burden of the party challenging the statute to rebut that presumption and to establish a constitutional violation. *Filan*, 216 Ill. 2d at 661; *Flynn v. Ryan*, 199 Ill. 2d 430, 436 (2002). Moreover, it is the duty of a court to construe a statute in a manner upholding its constitutionality, if such construction is reasonably possible. *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 120 (2001).

Plaintiffs first contend that the Illinois Constitution does not authorize the General Assembly to fix a mandatory retirement age in any form. This contention is patently without merit. Article VI, section 15(a), of the Illinois Constitution expressly states that "[t]he General Assembly may provide by law for the retirement of Judges and Associate Judges at a prescribed age." Ill. Const. 1970, art. VI (1964), §15(a).

Citing the provision's use of the phrase "may provide," plaintiffs make the claim that the retirement allowed by the constitution is meant to be discretionary with the judge and that the mention of the age of 75 in the statute is merely a suggested retirement age. This argument is untenable. By the clear and unambiguous terms of article VI, section 15(a), the discretion conferred through the phrase "may provide" rests not with the judge, but rather with General Assembly, which is al-

lowed the option of whether or not to enact a law establishing a prescribed retirement age. As the provision plainly states, it is the *"General Assembly* [that] may provide" for judicial retirement at a prescribed age. (Emphasis added.) Ill. Const. 1970, art. VI, §15(a).

Even if one could legitimately argue that the language of section 15(a) of the judicial article is ambiguous as to whether it allows for mandatory retirement, any such ambiguity is eliminated when one considers the circumstances surrounding its inclusion in the 1970 constitution. The authority to set a retirement age was initially incorporated into the Illinois Constitution of 1870 by way of an amendment that became effective January 1, 1964. Ill. Const. 1870, art. VI (1964), §18. The text of the 1964 constitutional amendment read as follows: "Notwithstanding the provisions of this Article relating to terms of office, the General Assembly may provide by law for the retirement of judges *automatically* at a prescribed age ***." (Emphasis added.) Ill. Const. 1870, art. VI (1964), §18. Our court considered this amendment in *Cusack v. Howlett*, 44 Ill. 2d 233, 244 (1969), and construed it as granting the General Assembly "authority *** to *** fix[ ] *** a mandatory retirement age for judges." In 1965, the General Assembly exercised its authority under this constitutional provision and enacted a statute that provided that a judge is "automatically retired" on the first Monday of December following the general election after he has attained the age of 70. Ill. Rev. Stat. 1965, ch. 37, par. 23.71.

The delegates to the 1970 constitutional convention were aware of the then-existing constitutional provision. They also knew that the legislature had exercised its authority in connection with that provision and that our court had interpreted the provision as allowing the General Assembly to enact a statute prescribing a mandatory retirement age. See 2 Record of Proceedings, Sixth

Illinois Constitutional Convention 1089 (hereinafter, Proceedings) (statements of Delegate Rachunas, noting the existence of section 18 of the judicial article of the 1964 amendment to the 1870 constitution and that the proposal for the 1970 constitution "deals with the automatic retirement for age and temporary recall to service. *** Also *** the General Assembly has already risen to the cause and provided for the retirement of judges at the age of seventy"). The delegates did not intend any substantive changes from the 1870 to the 1970 constitution with respect to mandatory retirement. The word "automatically" was removed from the final draft of the 1970 constitution by the Committee on Style, Drafting and Submission because it concluded that the removed language was "unnecessary." 6 Proceedings 3958 (statements of Delegate Whalen). Style deletions effected by this committee, which was not concerned with the substantive elements of the law but only the style of the language, should not be interpreted so as to thwart the obvious intent of the drafters. *Thies v. State Board of Elections*, 124 Ill. 2d 317, 323 (1988). Accordingly, there can be no real question that our current constitution does allow the legislature to prescribe mandatory retirement for judges.

Plaintiffs suggest that sections 15(b) and (c) of the judicial article, which establish procedures for removing judges for misconduct or physical or mental incapacity, support their claim that section 15(a) does not allow for mandatory retirement. Plaintiffs believe that because there is an avenue for removing a mentally or physically infirm judge, mandatory retirement is not needed and was not contemplated. The problem with plaintiffs' suggestion is that removal for cause and mandatory retirement are not mutually exclusive. There is simply no reason to believe that because the drafters of the constitution provided a mechanism for removing unquali-

fied judges, they did not also intend to allow the General Assembly to establish a mandatory retirement age.

Plaintiffs next argue that, assuming the legislature is constitutionally allowed to prescribe a mandatory retirement age, this was not done by the current statute because it does not set a specific age, but allows the judge who reaches 75 to finish out his or her term. A similar argument was rejected by the Seventh Circuit Court of Appeals in *Trafelet v. Thompson*, 594 F.2d 623, 627, 631 (7th Cir. 1979). There, the court considered whether section 2 of the Act (Ill. Rev. Stat. 1977, ch. 37, par. 23.72), which has since been deleted, violated article VI, section 15(a), of the Illinois Constitution (Ill. Const. 1970, art. VI, §15(a)) by failing to prescribe a single age at which judges must retire. Section 2 contained a grandfather clause that allowed judges in certain circumstances to serve long enough past the age of 70 to secure pension rights. Ill. Rev. Stat. 1977, ch. 37, par. 23.72. The court found that section 2 was not inconsistent with the Illinois Constitution because "[t]he Act does provide a prescribed age for retirement in [section] 1," and the framers were aware of section 2's existence at the time the 1970 constitution was adopted. *Trafelet*, 594 F.2d at 631.

Because lower federal courts exercise no appellate jurisdiction over state courts, decisions of lower federal courts are not conclusive on state courts, except insofar as the decision of the lower federal court may become the law of the case. *People v. Kokoraleis*, 132 Ill. 2d 235, 293-94 (1989). While the Seventh Circuit's decision in *Trafelet* is therefore not binding on this tribunal, I believe its rationale is persuasive and should be followed.

Correspondingly, I find plaintiffs' reading of the authority to set a retirement age is too narrow. The General Assembly has taken a reasonable approach in allowing judges to finish out their terms rather than set a

hard date of the judge's seventy-fifth birthday of stepping down. The statute is not rendered unconstitutional simply because it is more favorable than it has to be in allowing judges to finish out their terms upon reaching the age of 75.

Because the Illinois Constitution allows the General Assembly to prescribe mandatory retirement and because the statute currently in effect does prescribe a mandatory retirement age, it is necessary to address the crux of plaintiffs' constitutional challenge. Plaintiffs claim that the Retirement Act exceeds the authority of section 15(a) of the judicial article to compel retirement because the interpretation placed on the Act in *Anagnost v. Layhe*, 230 Ill. App. 3d 540 (1992), allows a 75-or-over judge to run in a contested election, but not for retention. In plaintiffs' view, the statute is therefore not a retirement statute at all, but merely an antiretention provision. Relying upon *People ex rel. Nachman v. Carpentier*, 30 Ill. 2d 475 (1964), plaintiffs claim that the Act, as interpreted, places an improper condition on the right of a sitting judge to seek retention as set forth in section 12(d) of the judicial article. In response, the Attorney General argues on behalf of defendants that the Act can reasonably be interpreted to mean that judges cannot run for retention if they reach 75, but that they can run for an open judicial seat in a contested election. Both sides rely upon the judicial interpretation placed on the Act by *Anagnost* to support their respective positions.

The petitioner in *Anagnost* was a 78-year-old licensed attorney who sought the Republican nomination to the office of supreme court justice. His nominating petitions were challenged based on the claim that he was ineligible for office under the Retirement Act. The petitioner responded by challenging the constitutionality of the Act and claiming that the legislature had no constitutional authority to prohibit persons 75 years of age or older

from running for judicial office. The appellate court believed that a difficult constitutional question was presented. On the one hand, it acknowledged the long line of authority that prevents the legislature from adding to qualifications for judicial office, which are specified in section 11 of article VI (Ill. Const. 1970, art. VI, §11).[19] On the other hand, it observed that section 15(a) of article VI expressly authorized the legislature to fix a mandatory retirement age for judges. The court opined that the foregoing provisions are not mutually exclusive, but rather must be read together as a rational plan for the regulation of this state's judiciary. *Anagnost v. Layhe*, 230 Ill. App. 3d at 543. It ultimately avoided finding any constitutional infirmity with the Retirement Act by limiting its applicability to retention of sitting judges. After noting distinctions drawn during floor debates on the statute between the dynamics of partisan elections and those of retention elections, the court concluded that the Act did not bar "a person over the age of 75 and otherwise qualified to serve as a judge from running in a judicial election." *Anagnost*, 230 Ill. App. 3d at 544.

The decision in *Anagnost* was not unanimous. A dissenting justice observed that the majority's holding "effectively is that a judge may seek election while beyond retirement age but not retention." *Anagnost*, 230 Ill. App. 3d at 546 (Jiganti, J., dissenting). The dissent further noted that while there arguably may be a difference between seeking election and seeking retention, the holding that a judge beyond retirement age may seek election but not retention brings about an absurd result. *Anagnost*, 230 Ill. App. 3d at 546 (Jiganti, J., dissenting).

---

[19]This section of the judicial article provides in relevant part that "[n]o person shall be eligible to be a Judge *** unless he is a United States citizen, a licensed attorney-at-law of this State, and a resident of the unit which selects him."

In the nearly 17 years since *Anagnost* was decided, the General Assembly has chosen not to amend the Retirement Act to provide for a different scheme from the one resulting from the *Anagnost* court's construction of the law. Where the legislature chooses not to amend a statute to supercede the judicial gloss placed on it by a court's construction of it, the presumption is that the legislature has acquiesced in the court's understanding of legislative intent. *People v. Coleman*, 227 Ill. 2d 426, 438 (2008). I further note, as the majority did in *Anagnost*, that there is language in the legislative debates to support the notion that the legislature intended a difference between the contested election of judges and the retention process whereby a sitting judge runs unopposed for his own seat. Representative John J. Cullerton, in speaking on behalf of the last amendment to the Retirement Act before *Anagnost*, stated that " 'since the public elects judges, they know or have the ability to find out what the age of a judge is, and so when they make that decision and elect that judge, that judge should be allowed to fill out his or her term, since that is what the people intended when they elected he or she.' " *Anagnost*, 230 Ill. App. 3d at 543-44, quoting 85th Ill. Gen. Assem., House Proceedings, November 16, 1988, at 44 (statements of Representative Cullerton).

As I have indicated, *Anagnost*'s construction of the law enabled the court to avoid a constitutional question. This enhances, rather than diminishes, its precedential value. As we have often held, courts are required to interpret statutes in such a manner so as to avoid raising constitutional questions when it is possible to do so. *Villegas v. Board of Fire & Police Commissioners*, 167 Ill. 2d 108, 124 (1995).

Contrary to plaintiffs' view, I do not believe that the Retirement Act can be dismissed as being merely an antiretention statute rather than a true retirement statute.

The current Illinois scheme requires a sitting judge 75-or-over to essentially withdraw from office by barring his running for retention to that office. This is consistent with the commonly understood meaning of "retirement," which is defined as a "withdrawal from office, active service, or business." Webster's Third New International Dictionary 1939 (1993). In this regard, the 75-or-over judge is required to retire by withdrawing from his present office and active service at the conclusion of his term. He cannot succeed himself to his office. That another, more arduous mode exists where a judge may seek elected office as a judge by way of a contested election and essentially start his career over like any other citizen who would like to run for judicial office does not make the statute any less of a compulsory retirement statute.

A judicial candidate is open to much greater public scrutiny in a contested election. The voters can more readily observe the candidate and distinguish him from his adversary. In contrast, in a retention election, the candidate's name simply appears on a long list without an opponent. Many sitting judges 75-or-over would likely conclude, as Judge Maddux has, that the effort and expense required to run in a contested election are more than they are willing to undertake. Under these circumstances, the legislature could certainly have concluded that the number of judges 75-or-over who would want to run in contested elections would be negligible, that barring retention would result in permanent retirement in most cases,[20] and that the rigors of running in contested primary and general elections would help ensure that any judge who did elect to run rather than retire would possess the stamina and ability to fulfill the require-

---

[20]Uncontested information provided by the Attorney General supports this assumption. It shows that no person 75 years of age or older has ever been elected to the office of judge.

ments for office. A statute that allows 75-year-old-or-older persons to run for judicial office, but prohibits them from succeeding themselves through retention, is therefore entirely rational and is a true retirement statute consistent with the constitutional delegation of authority to "provide by law for the retirement of Judges *** at a prescribed age." Ill. Const. 1970, art. VI, §15(a).

Plaintiffs' reliance upon *People ex rel. Nachman v. Carpentier*, 30 Ill. 2d 475 (1964), is misplaced. In *Nachman*, the statute in question prevented a sitting judge from running for retention while also accepting a nomination for another judicial office. Under the statute, when receiving a nomination to a different judicial office than the one the judge held, the judge was required to withdraw his declaration of candidacy for the retention election or "be deemed" to have resigned his office. *Nachman*, 30 Ill. 2d at 476. *Nachman* held that the legislature "may not impose the condition in question upon the constitutionally unqualified right of a previously elected judge to seek retention of his office." *Nachman*, 30 Ill. 2d at 478. In reaching this conclusion, this court first scrutinized those constitutional provisions that conferred authority on the legislature. This court specifically listed the authority to "fix a judicial retirement age" as being among the provisions that gave power to the legislature to act. *Nachman*, 30 Ill. 2d at 477. Finding no constitutional authority that would bar retention in the context before it, however, *Nachman* held that the legislative enactment barring retention while seeking nomination for another judicial office was invalid. *Nachman*, 30 Ill. 2d at 478.

*Nachman* is easily distinguishable from the present case. What sets the Retirement Act apart from the statute in *Nachman* is the express grant of authority found in section 15(a) of article VI to set a mandatory retirement age. This distinction is in line with the well-

established case law that holds that "the legislature is without authority to change or add to the qualifications [for office] *unless the Constitution gives it the power.*" (Emphasis added.) *Thies v. State Board of Elections*, 124 Ill. 2d 317, 325 (1988); see also *Cusack v. Howlett*, 44 Ill. 2d 233, 244 (1969) ("fixing \*\*\* a mandatory retirement age for judges" is a power granted to the legislature under section 15 of the judicial article); *People ex rel. Hoyne v. McCormick*, 261 Ill. 413, 419-20 (1913) (legislature could not validly enact law that required person running for county commissioner to reside in this state for five years preceding the election where the constitution contained only a one-year residency requirement).

Plaintiffs rely upon section 12(d) of the judicial article to support their claim that Judge Maddux has a right to run for retention. That section provides that a judge who has been elected to the bench may file a declaration of candidacy to succeed himself and that the Secretary of State shall certify the judge's candidacy for a retention election. Ill. Const. 1970, art. VI, §12(d). Plaintiffs' argument must be rejected, however, because it lacks the proper context and it ignores other key provisions of section 12 of the judicial article. Under section 12(d), when a judge runs for retention, he is running for his own office "to succeed himself." Ill. Const. 1970, art. VI, §12(d). Section 12(b) of the same article provides, on the other hand, that a judge's office "shall be vacant upon his \*\*\* retirement." Ill. Const. 1970, art. VI, §12(b). Section 12(c) in turn provides that a vacancy in the office of judge shall be filled as the General Assembly may provide by law or, in the absence of law, by supreme court appointment. Ill. Const. 1970, art. VI, §12(c); see, *e.g.*, *Tully v. State of Illinois*, 143 Ill. 2d 425 (1991) (noting that a seat becomes vacant upon compulsory retirement by the interaction of section 12(c) of the judicial article and the Retirement Act and holding that *laches* barred the judge

from challenging others who ran in a contested election for the "vacant office"). From the foregoing, it is clear that the constitutional and legislative scheme, at the very least, is designed to prevent a sitting judge who reaches the age of 75 from running for retention to his own office. Such a judge cannot run for retention "to succeed himself" because his office is deemed "vacant" upon the expiration of his term at his retirement. Such vacancies are to be filled as the General Assembly may provide by law or by supreme court appointment. There is nothing in the Illinois Constitution that allows a judicial office that will be deemed "vacant" to be filled by retention. Contrary to plaintiffs' suggestion, section 12(d) of the judicial article is not violated, or even implicated, because that section establishes the qualifications for judges seeking to retain offices that will not be deemed vacant due to "retirement."

Even if the constitutional provisions in sections 12(d) and 15(a) could somehow be said to conflict, I believe that they would have to be read in harmony with the overriding intent of the drafters and delegates of the constitutional convention to allow the General Assembly to establish mandatory retirement for judges. Constitutional provisions that govern a particular subject should not be viewed in isolation, but instead should be read as a rational plan for the regulation of the state's judiciary. See *Thies*, 124 Ill. 2d at 323; *Anagnost*, 230 Ill. App. 3d at 542.

Plaintiffs' final argument on appeal is that the Retirement Act is vague and therefore violates the due process clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2. Plaintiffs contend that the Act is vague because under the interpretation placed upon it in *Anagnost*, a judge 75-or-over can run in a contested election. According to plaintiffs, a person of ordinary intelligence would not

understand that the Act "is not a 'retirement' act at all."

Void for vagueness is a concept derived from the notice requirement of the due process clause. A statute can be impermissibly vague for either of two independent reasons: (1) if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; and (2) if it authorizes or even encourages arbitrary and discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732, 147 L. Ed. 2d 597, 621, 120 S. Ct. 2480, 2498 (2000); see also *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 124 (2001). As a general rule, a litigant whose conduct falls squarely within a statute's prohibition cannot complain of the vagueness of the law as applied to others. *City of Chicago v. Pooh Bah Enterprises, Inc.*, 224 Ill. 2d 390, 442 (2006). Moreover, in order to succeed on a vagueness challenge that does not involve a first amendment right, a party must establish that the statute is vague as applied to the conduct for which the party is being prosecuted. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 291 (2003).

For reasons already discussed, I reject plaintiffs' claim that there is no retirement under the Act when applying the *Anagnost* interpretation. I would now further hold that plaintiffs have not satisfied either prong of *Hill* for establishing a vagueness claim. Within the context of the statute, the meaning of automatic retirement is clear. A judge is retired at the end of the term in which he or she turns 75 years old. Retention is not an option. The fact that another, more difficult course exists for continued judicial service does not make the meaning of the provisions ambiguous.

Furthermore, the vagueness of which plaintiffs complain—that the Act does not bar running in a contested election—is irrelevant in this case because

Judge Maddux has specifically pleaded that he does not intend to run in a contested election. He has also acknowledged that the statute applies to the conduct he intends to engage in—running for retention. As a result, there is nothing unclear about it as applied to him. See *Pooh Bah Enterprises, Inc.*, 224 Ill. 2d at 444-45 (rejecting vagueness challenge because even though there might be circumstances where the meaning could be vague, such circumstances were not present there). I note, moreover, that the statute has now been in place for 44 years and the *Anagnost* interpretation in place for nearly 17 years, yet plaintiffs have not alleged anything specific to suggest that there has been any trouble in understanding or applying the statute. Under these circumstances, I would conclude that the Retirement Act is not unconstitutionally vague.

In declaring the Retirement Act invalid, the majority relies on equal protection principles. What my colleagues fail to mention is that plaintiffs themselves did not raise an equal protection challenge to the law in the circuit court, nor has an equal protection argument been raised by any party on appeal. The issue is therefore not properly before us. *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 190 (2009). Indeed, for the majority to raise the issue *sua sponte* directly conflicts with the court's obligation to uphold the constitutionality of a statute whenever it is reasonably possible to do so. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306-07 (2008).

Because the equal protection argument is not properly before us, I hesitate to address the equal protection claim fashioned by my colleagues. I feel compelled to note, however, that the majority's equal protection concerns are misguided. As a preliminary matter, I am not persuaded that the Retirement Act would necessarily result in disparate treatment of former judges who have turned 75 within their terms. In accordance with the

principle that we must construe a statute to uphold its validity whenever it is reasonably possible to do so, the Retirement Act should be read as precluding *any* judge who attains or has attained the age of 75 from seeking retention. Under that construction, judges who turn 75 while still in office are in precisely the same position as individuals who seek judicial office for the first time after attaining the age of 75 or judges who retired prior to turning 75 and then decided to seek judicial office again. In every case, the judge will still be permitted to seek and hold judicial office. He or she must simply do so by means of a contested election. The number of times the judge may seek office through such elections is unlimited.

Even if one is unwilling to accept this construction of the Retirement Act, the majority's equal protection theory would fail. Age is not a suspect classification under the equal protection clause. *Arvia v. Madigan*, 209 Ill. 2d 520, 538 (2004). Where, as in this case, a classification burdens neither a suspect group nor a fundamental interest, courts are " 'quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws.' " *Gregory v. Ashcroft*, 501 U.S. 452, 470-71, 115 L. Ed. 2d 410, 430, 111 S. Ct. 2395, 2406 (1991), quoting *Vance v. Bradley*, 440 U.S. 93, 97, 59 L. Ed. 2d 171, 176, 99 S. Ct. 939, 942 (1979). A classification will be upheld so long as the state can assert a rational basis for it. *Gregory v. Ashcroft*, 501 U.S. at 470-71, 115 L. Ed. 2d at 430, 111 S. Ct. at 2406. The standard is deferential. That is particularly so where the classification relates to matters falling within a state's constitutional prerogatives. Indeed, the United States Supreme Court has specifically held that the states' power to define the qualifications of their officeholders has force even as against the proscriptions of the fourteenth amendment. *Gregory v. Ashcroft*, 501 U.S. at 469, 115 L. Ed. 2d at 429, 111 S. Ct. at 2405.

Under a rational basis standard, a classification established by the state is not fatally infirm merely because it may be somewhat underinclusive or overclusive. Neither perfection nor mathematical nicety are required. *Vance v. Bradley*, 440 U.S. 93, 108, 59 L. Ed. 2d 171, 183, 99 S. Ct. 939, 948 (1979). Moreover, a law does not offend equal protection just because the legislature could have proceeded farther than it did. A legislature " 'need not "strike at all evils at the same time," [citation] and *** "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind," [citation].' " *City of New Orleans v. Dukes*, 427 U.S. 297, 305, 49 L. Ed. 2d 511, 518, 96 S. Ct. 2513, 2518 (1976).

In this case, the legislature could certainly have assumed that focusing on judges currently in office was the most effective way to meet the objectives it hoped to advance through mandatory retirement rules. While some persons who have passed the age of 75 may seek judicial office for the first time or, having previously held judicial office when they turned 75, may seek to return to office through a contested election, the number of such persons is likely to be small, their chances of success are remote, and the likelihood that they would want to remain in office after completing their first post-seventy-fifth birthday term is negligible. The mere theoretical possibility that such individuals may exist and could potentially end up being treated more favorably than judges who are precluded from seeking retention under the Retirement Act's provisions, as construed by the majority, cannot work to render the law invalid.

Finally, there is no merit whatever to the majority's perception that a conflict exists between article VI, section 11, of the Illinois Constitution (Ill. Const. 1970, art. VI, §11), which sets forth the eligibility for judicial office, and article VI, section 15(a) (Ill. Const. 1970, art. VI,

§15), which pertains to retirement of judges. The focus of article 11 is the qualifications one must possess to become a judge. Article 15(a), by contrast, concerns when a person already a judge may be required to leave judicial office through retirement. These are obviously separate and distinct issues.

The only way article VI, section 15(a), could be viewed as impinging on article VI, section 11, is if the eligibility factors set forth under section 11 were deemed to preclude any further restrictions on when one may continue to hold judicial office. There is, however, no principle of law that would support such a construction. To the contrary, it violates the well-established principle that

> "[i]f different parts of the constitution appear to be in conflict, the court must harmonize them, if practicable, and must favor a construction which will render every word operative rather than one which will make some words idle and nugatory. (1 Cooley's Constitutional Limitations 128 (8th ed. 1927); 2 J. Sutherland, Statutes and Statutory Construction, sec. 4705 (3d ed. 1943).) One clause will not be allowed to defeat another if by any reasonable construction the two can be made to stand together. 1 Cooley's Constitutional Limitations 129 (8th ed. 1927)." *Oak Park Federal Savings & Loan Ass'n v. Village of Oak Park*, 54 Ill. 2d 200, 203 (1973).

Such a construction would also lead to an absurd result, for if section 11 contains the exclusive list of eligibility criteria for judicial office, trumping the retirement provisions in section 15(a), it must likewise trump the provisions in section 15 dealing with the discipline or removal from office of judges suffering from mental or physical infirmities which render them unfit to perform their duties or who have engaged in misconduct prejudicial to the administration of justice or which brought the judicial office into disrepute. This surely is not what the drafters intended or what the people of this state

expected when they adopted the judicial article of our constitution.

There is likewise no merit to the majority's suggestion that section 11 of the judicial article somehow constrains the General Assembly's discretion in enacting judicial retirement legislation linked to a judge's age. As just discussed, section 11 pertains to the qualifications one must possess to become a judge. It does not address when one can be required to leave office through retirement or disability or as a result of misconduct. That is the subject of section 15, which expressly authorizes the General Assembly to provide by law for the retirement of judges at a prescribed age. Similarly, to the extent that any conflict exists between the Retirement Act and section 11 of the constitution, the conflict does not render the Act invalid. That is so because, as this court has previously held, the General Assembly may add to or alter the qualifications for office, even where those qualifications have been established by the constitution, where, as here, the constitution has given it the power to do so. See *O'Brien v. White*, 219 Ill. 2d 86, 100 (2006), citing *Thies v. State Board of Elections*, 124 Ill. 2d 317, 325-26 (1988).

For the foregoing reasons, the circuit court of Cook County reached the correct result when it upheld the constitutionality of the Retirement Act. Its judgment should therefore be affirmed. Because my colleagues reach a contrary conclusion, I respectfully dissent.

JUSTICE GARMAN joins in this dissent.