Docket No. 104386.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RANDALL COLEMAN, Appellant.

*Opinion filed February 7, 2008.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Defendant Randall Coleman was arrested during a joint federal/state narcotics investigation. He was charged in the circuit court of Du Page County with two counts of unlawful delivery of a controlled substance, convicted, and sentenced to 22 years' imprisonment. His convictions and sentence were affirmed on appeal. No. 2–05–0482 (unpublished order under Supreme Court Rule 23). The central issue in this case is whether the trial court should have suppressed audio recordings of conversations between the defendant and the State's confidential informant, which were authorized by federal law, but violated the Illinois proscription against eavesdropping. For the reasons that follow, we affirm.

## BACKGROUND

In late 2001, the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Addison police department, the Wheaton police department, and the Du Page County sheriff's office began a multiple jurisdiction narcotics investigation. During this investigation, the defendant was arrested and indicted on two counts of unlawful delivery of a controlled substance. Count I alleged that on August 7, 2003, the defendant delivered more than 15, but less than 100, grams of cocaine, in violation of section 401(a)(2)(A) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(2)(A) (West 2000)). Count II alleged that on August 4, 2003, the defendant delivered more than one, but less than 15, grams of cocaine, in violation of section 401(c)(2) of that act (720 ILCS 570/401(c)(2) (West 2000)).

The defendant pleaded not guilty and filed a motion to suppress audio recordings of conversations between himself and the State's confidential informant, Eugene Sanders. The motion alleged that the recordings were obtained in violation of the eavesdropping statute (720 ILCS 5/14–1 *et seq.* (West 2000)), and should be suppressed under section 108A–9 of the Code of Criminal Procedure of 1963 (725 ILCS 5/108A–9 (West 2000)). The defendant acknowledged that under federal law the recordings were obtained lawfully. He also acknowledged that under Illinois case law recordings made during a joint federal/state investigation are admissible regardless of whether they comply with the eavesdropping statute, unless there is evidence of collusion between federal and state agents to avoid the requirements of that statute. The defendant contended that such collusion existed because state agents had obtained authorization from a state court in July and August 2003 with respect to a different informant in this investigation. The trial court denied the defendant's motion.

At trial, Detective Dan Raysby of the Du Page County sheriff's office narcotics unit testified the investigation that led to the defendant began in 2001 around the "open air drug market" at the Bradford Court apartments in Addison, Illinois, and eventually targeted mid-level drug dealers in other municipalities. In July 2003, Raysby and ATF Agent Tom Murphy met with Sanders, a dealer and a friend of another informant used in this investigation, and Sanders agreed to

participate in a controlled purchase of narcotics from his supplier, the defendant. Murphy obtained authorization for Sanders to wear a recording device. When Raysby was asked on cross-examination whether he sometimes chose the federal process because it was "easier to obtain the overhear," he disagreed:

"I wouldn't do it because it's easier. It's because of what our intentions were as in charging. So [if] this was going to be a State case that I know the federal government would not be interested in period, then I wouldn't even bother with the whole federal process. Because as much as it might be as you characterized, easier to get a federal wire, it's a pain. And I'd much assume [*sic*] come in front of a state judge.

Now, with what I understood was that if you're going to charge someone federally, you believe you're going to charge someone federally, you need to go through the U.S. Attorney's Office and that's what was done."

Raysby testified that on August 4, 2003, he met Sanders at his apartment in Glen Ellyn, Illinois. Sanders spoke with the defendant on the telephone three times; Raysby recorded these conversations. At 4:15 p.m., Raysby searched Sanders, equipped him with a recording device, and gave him $200 to purchase drugs from the defendant. From a fence nearby, Raysby watched as a woman drove a sport utility vehicle into the apartment building's parking lot, where Sanders was waiting. The defendant exited the vehicle and walked to an alley behind the building with Sanders. The defendant soon returned to his vehicle and left the parking lot. Sanders then gave Raysby a plastic bag containing one-quarter of an ounce of crack cocaine. Sanders no longer had the money that Raysby gave him. Raysby testified that he maintained surveillance throughout this entire transaction.

Raysby further testified that on August 7, 2003, he again met Sanders at his apartment. Sanders spoke with the defendant on the telephone four times; Raysby recorded these conversations. At 3:30 p.m., Raysby searched Sanders, equipped him with a recording device, and gave him $600 to purchase drugs from the defendant. Sanders waited in the alley next to the apartment building, and the defendant soon drove into the parking lot. Raysby watched, and videotaped, as the defendant drove into the parking lot, exited his vehicle, walked to the alley where Sanders was waiting, and handed him a plastic bag.

The defendant left the parking lot. Sanders then gave Raysby a plastic bag containing three-quarters of an ounce of crack cocaine. Sanders no longer had the money that Raysby gave him. Raysby maintained surveillance throughout this transaction, and he recalled that Murphy was present on August 4 and 7. The videotape was shown to the jury.

Next, Sanders testified. He stated that he had three prior felony convictions: two convictions for possession of a controlled substance and one for possession of a weapon by a felon. At the time of his testimony, he was serving a prison sentence. In July 2003, Sanders agreed to cooperate with Raysby and the ATF in order to avoid investigation of his own activities, but he did not receive any inducements to do so. At that time, Sanders had known the defendant for two years, and had bought and sold drugs with him.

Sanders further testified that on August 4, 2003, he met with Raysby at an apartment building in Glen Ellyn. Sanders made three telephone calls to the defendant, all of which Raysby recorded. Raysby then searched Sanders, equipped him with a recording device, and gave him money. Sanders waited in the parking lot, and when the defendant arrived, he exchanged money for crack cocaine. Sanders gave the drugs to Raysby. On August 7, 2003, Sanders again met with Raysby. Sanders made four telephone calls to the defendant, all of which Raysby recorded. Raysby again searched Sanders, equipped him with a recording device, and gave him money. He waited in the parking lot, and when the defendant arrived, he exchanged the money for crack cocaine. Sanders gave the drugs to Raysby.

Claire Donaghey, a forensic scientist for the Du Page County sheriff's office, testified there were 6.68 grams of cocaine in the bag obtained on August 4 and 19.55 grams of cocaine in the bag obtained on August 7.

William Cooley, a Wheaton police officer, testified that the defendant was arrested on August 20, 2003. Cooley spoke with the defendant in a squad car after his arrest. The defendant surmised that someone had set him up. When Cooley asked the defendant if he worked, the defendant responded that selling drugs is all he knows, and all he is good at. The defendant did not admit that he sold drugs to Sanders on August 4 and 7. The State rested its case. The defendant presented Sanders' "source of information" agreement into evidence and also rested.

The jury found defendant guilty on both counts. The defendant filed a posttrial motion, arguing that the trial court erred in denying his motion to suppress. The court denied the defendant's posttrial motion and sentenced the defendant to 22 years' imprisonment.

The appellate court affirmed, finding "no compelling reason to abandon established case law that allows the admission of evidence obtained in violation of the Illinois eavesdropping statute when it has been obtained, absent collusion, in the course of a joint state and federal investigation and is in compliance with federal law." No. 2–05–0482 (unpublished order under Supreme Court Rule 23). The court noted that for more than 20 years, Illinois courts have upheld the admissibility of such evidence, and the legislature has remained silent on this issue. No. 2–05–0482 (unpublished order under Supreme Court Rule 23). We allowed the defendant's petition for leave to appeal. 210 Ill. 2d R. 315(a).

## ANALYSIS

The central issue in this case is whether audio recordings of conversations between the defendant and Sanders, which comply with federal law, but violate the state eavesdropping statute, should have been suppressed. The State contends that the defendant has forfeited our review of this issue. According to the State, the defendant's suppression motion argued only that there was collusion between federal and state authorities to circumvent the eavesdropping statute. He never made the argument that he makes before this court–namely, that this court should overturn appellate court cases holding that electronic surveillance evidence gathered pursuant to federal law during a joint federal/state investigation is admissible in an Illinois trial. Essentially, the State asks us to reject the defendant's appeal simply because he never asked the trial court to depart from the precedent he now challenges.

Certainly, to preserve an issue for appellate review, a defendant must both object at trial and present the same issue in a written posttrial motion. *People v. Phelps*, 211 Ill. 2d 1, 10-11 (2004). The defendant did just that here. He argued before and after trial that the audio recordings should be suppressed. The fact that he did not ask the trial court to ignore appellate court precedent is unsurprising: the

decisions of our appellate court are binding on all circuit courts. See *People v. Harris*, 123 Ill. 2d 113, 128 (1988). We turn to the merits of the defendant's appeal. Because there are no disputed facts, our review proceeds *de novo. People v. Pitman*, 211 Ill. 2d 502, 512 (2004).

In 1968, Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (see 18 U.S.C. §2510 *et seq.* (2000)) in response to *Berger v. New York*, 388 U.S. 41, 18 L. Ed. 2d 1040, 87 S. Ct. 1873 (1967), and *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), where the Supreme Court articulated certain fourth amendment problems inherent in wiretapping.[1] Title III protects the privacy of oral and wire communications and provides uniform conditions for the interception of such communications. See Senate Report on the Omnibus Crime Control and Safe Streets Act of 1968 (Judiciary Committee), S. Rep. No. 90–1097 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2153. This statute prohibits recording conversations when neither party consents, but it provides: "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. §2511(2)(c) (2000). Title III, thus, does not require federal agents to obtain a court order before wiring a confidential informant.

Congress intended to preempt this area, but specifically permitted concurrent state regulation. See 18 U.S.C. §2516(2) (2000). That is, states may adopt standards more stringent than those in Title III. See *Commonwealth v. Vitello*, 367 Mass. 224, 246, 327 N.E.2d 819, 832-33 (1975). The Illinois General Assembly has enacted a rigorous eavesdropping statute, which prohibits recording conversations unless all the parties consent or one party consents and prior judicial

---

[1]The defendant raises no federal constitutional issue in this case. Indeed, there is no constitutional issue here: "[E]avesdrops made with one-party consents are not in violation of the fourth amendment." See *People v. O'Dell*, 84 Ill. App. 3d 359, 364 (1980); accord *People v. Woollums*, 93 Ill. App. 3d 144, 149 (1981).

authorization is obtained. Section 14–2(a) of the Criminal Code of 1961 provides:

> "A person commits eavesdropping when he:
>
> (1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication or (B) in accordance with Article 108A or Article 108B of the 'Code of Criminal Procedure of 1963' ***." 720 ILCS 5/14–2 (West 2004).

Article 108A concerns the judicial supervision of the use of eavesdropping devices, and article 108B concerns electronic criminal surveillance. Section 108A–9(a)(1) and section 108B–12(c)(1) both provide that an aggrieved person may file a motion to suppress any conversation that was recorded or intercepted in violation of the eavesdropping statute. See 725 ILCS 5/108A–9(a)(1), 108B–12(c)(1) (West 2000); see also 720 ILCS 5/14–5 (West 2000). Here, there is no question that the recordings violate that statute: the defendant did not consent, and the recording was not authorized by a judge. But there is also no question that the recordings do not violate federal law.

In *People v. Fidler*, 72 Ill. App. 3d 924 (1979), federal agents recorded conversations between a confidential informant and the defendant. Armed with these conversations, the agents obtained a warrant to search the defendant's home for stolen postal money orders, but found drugs instead. The agents gave the drugs to the State, which prosecuted the defendant for unlawful possession of a controlled substance and unlawful possession of cannabis. The trial court suppressed the drugs.

The appellate court reversed, holding that the purpose of the exclusionary rule–"to deter law enforcement officers from violating the constitutional rights of citizens by removing the incentive for disregarding such rights"–would not be served by barring this evidence. *Fidler*, 72 Ill. App. 3d at 926. The court stated, "the eavesdropping was conducted entirely by Federal officers who complied with the applicable Federal statute, and acted pursuant to an

investigation of a violation of Federal law." *Fidler*, 72 Ill. App. 3d at 926. The federal agents' actions were entirely lawful, and the record contained no evidence that the federal and state agents colluded to avoid the requirements of the Illinois eavesdropping statute. *Fidler*, 72 Ill. App. 3d at 926. Accordingly, concluded the court, "[t]he only result of the entry of the suppression order in this case is that it prevents highly probative evidence from being available to the finder of fact in a criminal trial." *Fidler*, 72 Ill. App. 3d at 926.

*People v. Manna*, 96 Ill. App. 3d 506 (1981), extended the rule in *Fidler*. In *Manna*, federal agents recorded conversations between a confidential informant and the defendant, while state agents protected them. The court held that, in the absence of "a collusive attempt to evade the Illinois eavesdropping statute," the defendant's motion to suppress the recordings was properly denied. *Manna*, 96 Ill. App. 3d at 516. Finally, in *People v. Winchell*, 140 Ill. App. 3d 244, 246-47 (1986), the appellate court held in a joint federal/state investigation, where state agents have an active role, audio recordings are not inadmissible where there is federal authorization for the use of an eavesdropping device. The court noted:

> "The eavesdropping in the instant case was carried out by both State and Federal agents, who complied with Federal law but ignored Illinois directives. This fact arguably sets apart the present circumstances from those in [*Manna* and *Fidler*]. However, because the record is devoid of any collusion to avoid the Illinois requirements, and none has been suggested, we believe that the analysis of the court in *Manna* and *Fidler* requires us to conclude that the tape recording of defendant's conversation with the undercover agents was properly admitted into evidence." *Winchell*, 140 Ill. App. 3d at 246-47.

Subsequent Illinois cases are all in accord. See *People v. Burnom*, 338 Ill. App. 3d 495, 509 (2003); *People v. Laliberte*, 246 Ill. App. 3d 159, 175 (1993); *People v. Barnes*, 230 Ill. App. 3d 272, 274-75 (1992); *People v. Hodge*, 220 Ill. App. 3d 886, 889 (1991); *People v. Mays*, 188 Ill. App. 3d 974, 979-80 (1989).

The defendant argues that these Illinois cases were wrongly decided. According to the defendant, because the federal statute did not explicitly preempt the eavesdropping statute, the audio recordings here are inadmissible in state court unless they comport with state law.

And state law, asserts the defendant, is clear: the eavesdropping statute's plain language indicates that unless there is prior judicial approval, all parties must agree to have their conversation recorded. See 720 ILCS 5/14–2(a) (West 2000); see also *People v. Bockman*, 328 Ill. App. 3d 384, 388 (2002) ("Because Illinois citizens are entitled to be safeguarded from unnecessary governmental surveillance and other unreasonable intrusions into their privacy, the statutory restraints on eavesdropping must be strictly construed"); *People v. Nunez*, 325 Ill. App. 3d 35, 45 (2001).

The defendant asserts that numerous cases, both federal and state, have held that whenever a state chooses to enact a wiretapping statute that is more restrictive than the federal wiretapping statute, the state and its law enforcement officers must adhere to the minimum procedural requirements of both statutes. The defendant chiefly relies upon *People v. Jones*, 30 Cal. App. 3d 852, 106 Cal. Rptr. 749 (1973), and *State v. Williams*, 94 Wash. 2d 531, 617 P.2d 1012 (1980). In *Jones*, the California appellate court held that Title III did not preempt state legislation on electronic evidence: "The purpose of the federal law is twofold: to protect the privacy of wire and oral communications; and to establish uniform standards for judicial authorization of an invasion of that privacy [citation]. The California law requiring exclusion of evidence does not conflict with these provisions of the federal law." *Jones*, 30 Cal. App. 3d at 855, 106 Cal. Rptr. at 751. In *Williams*, the Washington Supreme Court agreed that the federal wiretap statute did not preempt the more rigorous state privacy act. *Williams*, 94 Wash. 2d at 539, 617 P.2d at 1017.

Contrary to the defendant's argument, neither *Jones* nor *Williams* creates a broad rule that a joint federal/state investigation must comply with both federal and state law on wiretaps. Instead, *Jones* and *Williams* stand for the unremarkable proposition that Title III does not preempt state legislation on eavesdropping. Though the recordings here violate the eavesdropping statute, they are not inadmissible pursuant to case law interpreting that statute. As the State correctly notes, when a court interprets a statute and the legislature does not amend it to supersede that judicial gloss, we presume that the legislature has acquiesced in the court's understanding of legislative intent. See *People v. Hairston*, 46 Ill. 2d 348, 353 (1970). Here, the General Assembly has remained silent

following a line of cases spanning nearly 30 years. Its inaction indicates that these appellate court cases are not contrary to its intent.

Further, *Jones* and *Williams*, unlike *Fidler* and its progeny, do not discuss the purpose of the exclusionary rule. We have held that the eavesdropping statute will exclude evidence only if it was gathered in a criminal manner. See *People v. Barrow*, 133 Ill. 2d 226, 257 (1989); *People v. Gaines*, 88 Ill. 2d 342, 364 (1981). Here, the authorization to wire Sanders was obtained pursuant to federal law by an ATF agent based on Sander's consent. Under the supremacy clause (U.S. Const., art. IV, cl. 2), the eavesdropping statute could not outlaw the activities of the federal agents. See *United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976). If the primary purpose of the exclusionary rule is to deter future police misconduct (see *People v. Wright*, 183 Ill. 2d 16, 25 (1998)), then it does not serve the interests of justice to suppress electronic surveillance evidence gathered pursuant to federal law during a joint investigation. See *Fidler*, 72 Ill. App. 3d at 926; *Basham v. Commonwealth*, 675 S.W.2d 376, 379 (Ky. 1984) ("if the federal wiretap conformed to the requirements of the Federal Wiretap Statute, the evidence was not obtained illegally and the 'exclusionary rule' for suppression of evidence illegally obtained by police officers or prosecutors by means constitutionally impermissible is not involved"); *Commonwealth v. Bennett*, 245 Pa. Super. 457, 462, 369 A.2d 493, 495 (1976) ("No useful purpose whatsoever would be served by denying the Commonwealth the use of this information").

We reaffirm the rule from our appellate court that electronic surveillance evidence gathered pursuant to federal law, but in violation of the eavesdropping statute, is not inadmissible absent evidence of collusion between federal and state agents to avoid the requirements of state law. Collusion has been defined as a " ' "secret agreement; secret cooperation for a fraudulent or deceitful purpose." ' " See *Burnom*, 338 Ill. App. 3d at 509, quoting *Hodge*, 220 Ill. App. 3d at 889, quoting Webster's Third New International Dictionary 446 (1986); see also *Basham*, 675 S.W.2d at 381-82 (stating that the cloud of collusion would arise if there were no federal investigation or no federal offense in progress); *State v. Minter*, 116 N.J. 269, 284, 561 A.2d 570, 578 (1989) (listing questions probative of collusion). Here, at the hearing on the defendant's motion to dismiss, defense counsel conceded that he could not present any evidence of collusion.

Indeed, we find no such evidence in the record. As Raysby explained, the investigation was intended to result in a federal prosecution. Federal agents and state agents were working together to target dealers who would hopefully then turn on their suppliers. Such cooperation does not constitute collusion (*Barnes*, 230 Ill. App. 3d at 276), and it should be encouraged, "not deterred under the guise of a conspiracy or plot to evade the State criminal code" (*Hodge*, 220 Ill. App. 3d at 889).

## CONCLUSION

For the reasons that we have discussed, we affirm the judgment of the appellate court.

*Affirmed.*