# Illinois Official Reports

## Appellate Court

---

### *People v. Allard*, 2018 IL App (2d) 160927

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES ALLARD, Defendant-Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GARLAND BONE, Defendant-Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GREGORY HARRIS SR., Defendant-Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TYRONE SPRINGS, Defendant-Appellee. –THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ANTHONY LOVE, Defendant-Appellee. |
| District & No. | Second District<br>Docket Nos. 2-16-0927, 2-16-0928, 2-16-0929, 2-16-1050, 2-17-0033 cons. |
| Filed | February 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, Nos. 14-CF-2567, 14-CF-2964, 14-CF-2971, 14-CF-2973, 14-CF-2975, 14-CF-3191; the Hon. George D. Strickland, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Lawrence M. Bauer, Richard S. London, and Stephanie H. Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Richard Dvorak and Christopher A. Tinsley, of Dvorak Law Offices, LLC, of Willowbrook, for appellee James Allard.

Michael J. Pelletier, Thomas A. Lilien, and Sherry R. Silvern, of State Appellate Defender's Office, of Elgin, for other appellees.

Panel          JUSTICE BURKE delivered the judgment of the court, with opinion. Presiding Justice Hudson and Justice Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1       As part of an investigation into gang activity, the Lake County State's Attorney's Office obtained authorization to intercept private communications involving certain telephone numbers. The circuit court of Lake County authorized the nonconsensual electronic surveillance, pursuant to article 108B of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/108B (West 2014)), based on applications signed and presented by two assistant state's attorneys (ASAs), not by the elected state's attorney (SA).

¶ 2       Defendants were charged with various offenses, and they learned that the State intended to introduce at trial certain evidence arising from the wiretaps. Defendants joined in a motion to suppress the evidence, arguing that the SA's failure to personally apply for the wiretap orders violated article 108B as well as the federal wiretap statute set forth in Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510-2522 (2012)), better known as "Title III." The trial court suppressed the evidence, ruling that Title III preempts article 108B and does not authorize an ASA to apply for a wiretap order.

¶ 3       On appeal from the suppression orders, the State argues that the SA complied with the Illinois and federal wiretap statutes in delegating to the ASAs the authority to apply for the wiretap orders. The State alternatively contends that, even if the orders were not supported by proper applications, the evidence is admissible because the prosecution acted in good faith. Further, the State asserts that any new rule regarding who may submit a wiretap application should apply only prospectively.

¶ 4       We affirm the trial court's suppression of the evidence derived from the wiretaps on the ground that the SA's office simply failed to comply with article 108B of the Code of Criminal Procedure. The good-faith exception does not apply because the error was caused by law enforcement. Further, any consideration of a retroactive or prospective application of our holding would be premature. We need not address the remaining issues raised by the parties, including whether article 108B is impermissibly broader than Title III.

## I. BACKGROUND

### A. The Applications

Between May 2014 and September 2014, ASA Reginald Mathews, chief of the gang and narcotics prosecution division of the Lake County State's Attorney's Office, and, in one instance, ASA Ari P. Fisz, chief of the felony trial division of the Lake County State's Attorney's Office, signed and presented applications to the circuit court of Lake County. The applications requested orders and extension orders for nonconsensual telephone interceptions related to a law enforcement investigation involving a street gang known to investigators as the Four Corner Hustler Drug Trafficking Organization (the gang). The investigation was being conducted by the Federal Bureau of Investigation (FBI); the Lake County Metropolitan Enforcement Group; and the police departments of Waukegan, North Chicago, and Zion. The goal of the investigation was to obtain evidence to prosecute individuals who were trafficking cocaine and heroin in and around Lake County.

The applications for wiretap orders targeted specific cell phone numbers that, according to the supporting affidavits, the investigation had linked to defendants. Each application was supported by an affidavit from an investigator, and each stated that it was submitted "on behalf of Michael G. Nerheim, State's Attorney of Lake County." The orders approving the wiretaps were signed by Judge Victoria Rossetti, presiding judge of the criminal division of the circuit court of Lake County, except for one extension order that was signed by Judge Daniel Shanes of the Lake County circuit court.

Consistent with the applications, each order noted that the application was made, under oath, by either ASA Mathews or, in one instance, ASA Fisz, "on behalf of Michael G. Nerheim, State's Attorney of Lake County." The orders stated that they were entered pursuant to article 108B of the Code of Criminal Procedure.

Section 108B-2 governs "[r]equest[s] for application for interception." 725 ILCS 5/108B-2 (West 2014). The statute provides that "[a] State's Attorney may apply for an order authorizing interception of private communications *in accordance with the provisions of this Article*." (Emphasis added.) 725 ILCS 5/108B-2(a) (West 2014). In turn, section 108B-3(b) provides that "[t]he State's Attorney or *a person designated in writing or by law to act for the State's Attorney and to perform his or her duties during his or her absence or disability*, may authorize, in writing, an *ex parte* application to the chief judge of a circuit court for an order authorizing the interception of a private communication when no party has consented to the interception and the interception may provide evidence of, or may assist in the apprehension of a person who has committed, is committing or is about to commit, a violation of an offense under Article 29D of the Criminal Code of 1961 or the Criminal Code of 2012." (Emphasis added.) 725 ILCS 5/108B-3(b) (West 2014).

### B. Motions to Suppress

On November 19, 2014, defendants were indicted for racketeering conspiracy, racketeering, criminal drug conspiracy, street gang criminal drug conspiracy, controlled substances trafficking, and unlawful possession of a controlled substance with the intent to deliver. On October 28, 2015, defendants were indicted for additional counts of criminal drug conspiracy and street gang criminal drug conspiracy.

¶ 13      On February 22, 2016, defendants moved to suppress evidence that had been obtained pursuant to the wiretap orders. Defendants' motion argued that, pursuant to Illinois and federal law, an application for a wiretap order must be personally authorized, in writing, by the elected SA, in this case SA Nerheim, or a person designated by the SA in writing or authorized by law to act for him in his absence. Defendants asserted that neither ASA Mathews nor ASA Fisz was so authorized and that, therefore, the orders entered pursuant to the applications were invalid. On April 26, 2016, the State responded that ASAs Mathews and Fisz were properly authorized to act on behalf of SA Nerheim for the purpose of submitting the applications under article 108B. Specifically, the State submitted a letter, on the SA's office letterhead, that was dated July 10, 2013, and signed by SA Nerheim. The letter stated that SA Nerheim granted ASA Mathews "my authorization for the interception of private communication pursuant to the requirements as set forth in [section 108B-3]."[1]

¶ 14      The parties argued the suppression motion at a hearing on July 28, 2016. On September 26, 2016, before the trial court ruled on the motion, the State filed affidavits from SA Nerheim and ASA Mathews that outlined the application process in these cases. The affidavits described a January 2014 meeting regarding the investigation of drug offenses and violent crimes by the gang. At the meeting, ASA Mathews and FBI agents informed SA Nerheim of the need for wiretap orders to further the investigation. Based on this information, SA Nerheim authorized ASA Mathews to apply for the requested orders under article 108B. The affidavits also stated that, from January 2014 to October 2014, ASA Mathews kept SA Nerheim apprised of the progress and developments of the investigation, including each request for additional wiretap orders. SA Nerheim averred that he was involved in the decision-making process throughout the investigation.

¶ 15      ASA Mathews also averred that, during the week of August 4, 2014, he was contacted by an FBI agent who advised him that the investigation had revealed that one of the defendants was using an additional specified cell phone number to commit the offenses at issue. Because he was out of town, ASA Mathews asked ASA Fisz to prepare a wiretap application for that cell phone number and to present the application to the circuit court in ASA Mathews's absence.

¶ 16                          C. Suppression Orders

¶ 17      On September 27, 2016, the trial court entered five orders, one for each defendant, suppressing the evidence derived from the challenged wiretaps. The court observed that each wiretap application was signed by ASA Mathews or ASA Fisz and stated the following: "I am authorized by law to investigate, prosecute, and participate in the prosecution of the particular offenses which are the subject of this application." The court also acknowledged the evidence of the January 2014 meeting among SA Nerheim, ASA Mathews, and the FBI agents, during which wiretaps were discussed. However, none of the applications cited a statute that authorized the application. SA Nerheim did not sign any of the applications, and they did not indicate on their face that he authorized them. The court determined that the legislature intended sections 108B-2 and 108B-3 of the Code of Criminal Procedure to be read together,

---

[1]SA Nerheim's letter also purported to delegate authority to ASA Stephen Scheller, chief of the felony review division, whose actions are not at issue in these appeals. The letter did not mention ASA Fisz.

and in doing so, the court concluded that the statutes allow an ASA to submit an application only when that person is designated in writing or by law to act for the SA and to perform his or her duties during his or her absence or disability. The court found that the applications did not meet that threshold.

¶ 18 The trial court also restated the well-settled concept that, by enacting Title III to delineate how states may authorize applications for wiretap orders (18 U.S.C. § 2516 (2012)), Congress preempted the regulatory field of electronic surveillance, and therefore Illinois may not enact standards that are less stringent than the requirements set by the federal statute. *People v. Coleman*, 227 Ill. 2d 426, 434 (2008) ("Congress intended to preempt this area, but specifically permitted concurrent state regulation" in that "states may adopt standards more stringent than those in Title III"). The court noted that *Coleman* made clear that section 2516 of Title III sets the outer limit within which Illinois may permit authorization of requests for wiretap orders and that "any evidence obtained under a State statute less restrictive than Title III would be inadmissible in State courts." In the absence of Illinois case law on the matter, the court adopted from other jurisdictions the position that section 2516(2) of Title III requires that a wiretap application be authorized in writing by an elected SA, not by an ASA as occurred here. *State v. Daniels*, 389 So. 2d 631, 635 (Fla. 1980); *State v. Cocuzza*, 301 A.2d 204 (N.J. Super. Ct. Law Div. 1973) (section 2516(2) limits wiretap application authority to "the principal prosecuting attorney of any (state) political subdivision," and because such a subdivision exists at the county level only, only the county prosecutor is so authorized). The court held that the applications for the wiretap orders did not comply with article 108B because they were not personally authorized by SA Nerheim, and that, even if the applications complied with the state statute, they violated Title III.

¶ 19 On October 26, the State filed certificates of impairment and timely notices of appeal. This court consolidated the appeals.

                                II. ANALYSIS
¶ 20
¶ 21                          A. Standard of Review
¶ 22 The State appeals the suppression of the evidence derived from the wiretaps of defendants' cell phones. "In reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part standard of review adopted by the Supreme Court in *Ornelas v. United States* [citation]." *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). We defer to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence. A reviewing court, however, remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Luedemann*, 222 Ill. 2d at 542. In this case, the facts regarding the wiretap applications are not disputed, so we undertake an independent assessment of those facts and review the suppression orders *de novo*. See *People v. O'Dette*, 2017 IL App (2d) 150884, ¶ 26.

¶ 23                        B. Authority of Applicants
¶ 24 On appeal, the parties dispute whether ASAs Mathews and Fisz acted in accordance with article 108B of the Code of Criminal Procedure and section 2516(2) of Title III, as SA Nerheim did not personally sign or present the wiretap applications. Article 108B, which

allows *ex parte* wiretap applications, provides that the application may be authorized in writing by "[t]he State's Attorney or a person designated in writing or by law to act for the State's Attorney and to perform his or her duties during his or her absence or disability." 725 ILCS 5/108B-2(a), 108B-3(b) (West 2014). The application shall include "[t]he authority of the applicant to make the application." 725 ILCS 5/108B-4(1) (West 2014).[2]

¶ 25    Title III prohibits the interception and disclosure of wire, oral, and electronic communications, as well as the manufacture, distribution, and possession of such interception devices. However, it expressly authorizes federal and state government authorities in certain criminal investigations to intercept, disclose, and use such communications, which include emails, facsimile transmissions, pager numbers, and telephone calls. As noted, by enacting Title III to delineate how states may authorize applications for wiretap orders (18 U.S.C. § 2516 (2012)), Congress preempted the regulatory field of electronic surveillance, and therefore Illinois may not enact standards that are less stringent than the requirements set by the federal statute. *Coleman*, 227 Ill. 2d at 434. Section 2516(2) provides in relevant part as follows:

> "*The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof*, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made ***." (Emphasis added.) 18 U.S.C. § 2516(2) (2012).

¶ 26    The trial court found the wiretap orders to be invalid on the ground that section 2516(2) requires that a wiretap application be authorized in writing by an elected SA, not by an ASA as occurred in these cases. See *Daniels*, 389 So. 2d at 635.

¶ 27    The State argues that the applications for the wiretap orders complied with article 108B of the Code of Criminal Procedure and section 2516(2) of Title III. The State concludes that SA Nerheim properly delegated to ASAs Mathews and Fisz his authority to sign and submit the applications under Illinois law and that article 108B is not impermissibly broader than section 2516 of Title III.

¶ 28    As noted, section 2516 sets the outer limit within which Illinois may permit authorization of requests for wiretap orders, which raises the issue of whether article 108B of the Code of Criminal Procedure is impermissibly broader than section 2516(2) of Title III. In the context of Title III preemption, courts have articulated different standards for determining whether state wiretapping statutes are "less restrictive legislation" when considering whether the "principal

---

[2]Section 108B-4 sets forth the required contents of a valid wiretap application, but defendants' challenge to the applications' validity is limited to the applicants' authority to submit them. See 725 ILCS 5/108B-4(1) (West 2014). Defendants have not argued, and the trial court did not find, that (1) the applications and supporting affidavits did not establish probable cause or (2) there was an insufficient showing that traditional investigative efforts had been exhausted or could not be used. See 725 ILCS 5/108B-4(3)(iv), (viii) (West 2014).

prosecuting attorney of any political subdivision" of a state may delegate his or her authority to apply for a wiretap. *Villa v. Maricopa County*, 865 F.3d 1224, 1230 (9th Cir. 2017); 18 U.S.C. § 2516(2) (2012). The Supreme Court of Kansas has held that state officials must follow the federal statute to the letter in obtaining wiretaps. See, *e.g.*, *State v. Bruce*, 287 P.3d 919, 924-25 (Kan. 2012). The Supreme Court of Rhode Island has characterized Title III as "preempt[ing] the field in wiretap," holding that state courts must adhere closely to the limitations articulated in Title III on the use of intercepted communications. *Pulawski v. Blais*, 506 A.2d 76, 77 (R.I. 1986).

¶ 29     Taking a less restrictive approach, other state courts have ruled that states may enact legislation permitting the delegation of authority to apply for wiretaps. Prominently, the Supreme Judicial Court of Massachusetts has held that a state wiretapping statute is not preempted by Title III so long as it is "substantially similar in design and effect to the Federal enactment." *Commonwealth v. Vitello*, 327 N.E.2d 819, 835 (Mass. 1975).

¶ 30     Conceding federal preemption, the State here asserts that article 108B is consistent with Title III and empowered SA Nerheim to delegate his authority to apply for the wiretap orders. We need not resolve this larger issue of whether article 108B is impermissibly broader than Title III because the wiretap orders in these cases are invalid based simply on the prosecution's noncompliance with article 108B. We agree with defendants that the orders were based on invalid applications, which lacked adequate statements of the authority under which the ASAs were making the applications. It remains an open question as to whether the July 10, 2013, letter properly designated the ASAs to act for SA Nerheim and to perform his duties during his absence or disability.

¶ 31                                    1. ASA Mathews

¶ 32     SA Nerheim's July 10, 2013, letter granted ASA Mathews "my authorization for the interception of private communication pursuant to the requirements as set forth in [section 108B-3]." Thus, the letter purported to designate ASA Mathews as an authorized applicant, and it incorporated section 108B-3 by reference, which purportedly limited ASA Mathews's application authority to situations where SA Nerheim was absent or disabled. One could argue that the reference to the statute constituted sufficient specificity for a proper delegation of the SA's application authority. On the other hand, the letter did not mention the gang, the investigation, any of the defendants, or the circumstances of SA Nerheim's absence or disability, which certainly would have bolstered the designation. The letter might have been a valid authorization upon an averment that SA Nerheim was absent or disabled, but we need not decide whether the letter contained the required specificity to delegate application authority to ASA Mathews. We conclude that the applications themselves did not comply with article 108B.

¶ 33     Regardless of whether ASA Mathews was properly designated as an authorized applicant, the applications were facially deficient. Each application for a wiretap order must include the applicant's authority to make the application. 725 ILCS 5/108B-4(a)(1) (West 2014). ASA Mathews stated only that he was "authorized by law to investigate, prosecute, and participate in the prosecution of the particular offenses which are the subject of this application." ASA Mathews neither identified the source of his authority to make the applications nor attached documentation of SA Nerheim's purported delegation of such authority. Further, the applications failed to affirmatively state that SA Nerheim was absent or disabled.

¶ 34    The circumstances surrounding the applications also undermine their validity. At the January 2014 meeting, SA Nerheim was informed of the need for wiretap orders to further the investigation into the gang. He and ASA Mathews averred in affidavits that, based on this information, SA Nerheim authorized ASA Mathews to apply for the orders under article 108B. The affidavits also stated that, from January 2014 to October 2014, ASA Mathews kept SA Nerheim apprised of the progress and developments of the investigation, including each request for additional wiretap orders. SA Nerheim averred that he was involved in the decision-making process throughout the investigation.

¶ 35    The plain language of section 108B-3 contemplates the designation of an applicant to perform the SA's duties during his absence or disability. Here, SA Nerheim and ASA Mathews averred in their affidavits that SA Nerheim was involved in decision-making during the entire investigation, including when the applications were made. The implication is that the applications were effectively authorized by SA Nerheim, even if his subordinates drafted, signed, and presented them. On the one hand, the State implies a patina of legitimacy by claiming that SA Nerheim was overseeing the application process, but at the same time it claims that he was "absent" for purposes of section 108B-3. Even if article 108B did not require ASA Mathews to be designated as the acting SA to obtain application authority, SA Nerheim's ongoing involvement in the investigation meant that he was not absent for purposes of section 108B-3.

¶ 36                                   2. ASA Fisz

¶ 37    SA Nerheim's July 10, 2013, letter did not mention ASA Fisz. Nevertheless, the State claims that SA Nerheim empowered ASA Mathews "to both apply himself, *and* authorize others to apply for wiretaps." (Emphasis in original.)

¶ 38    As noted, the applications submitted by ASA Mathews did not adequately state his authority to present them or that SA Nerheim was absent or disabled. The purported authority of ASA Fisz to submit an application on behalf of SA Nerheim is even more attenuated. ASA Mathews averred that, while he was out of town, an FBI agent informed him that one of the defendants was using a cell phone for which there was no electronic surveillance. ASA Mathews asked ASA Fisz to prepare a wiretap application for that cell phone and to present the application to the circuit court in his absence.

¶ 39    Because there was no showing that SA Nerheim was absent or disabled, ASA Mathews was not designated to act in his place. Even if ASA Mathews had the authority to make the application, nothing in section 108B-2 gave him the power to further delegate that authority, especially to an ASA who was not identified by SA Nerheim in his purported designation letter. See 725 ILCS 5/108B-3(b) (West 2014) (authorized applicant must be "designated in writing or by law to act for the State's Attorney and to perform his or her duties during his or her absence or disability").

¶ 40                           C. Good-Faith Exception

¶ 41    The State argues that, even if the underlying wiretap applications failed to comply with article 108B, the ASAs and the investigators who implemented the wiretap orders were acting in good faith, and therefore the evidence should not be suppressed.

¶ 42    Defendants contend that the State has forfeited its argument regarding good faith by failing to raise the issue in the trial court. *People v. Holloway*, 86 Ill. 2d 78, 91 (1981). The State offers no response to this contention, and our review of the record discloses no sign that the argument was presented. We agree with defendants that the State has forfeited the issue, and we need not consider it. See *People v. Hall*, 2011 IL App (2d) 100262, ¶ 19 (forfeiture doctrine applies to the State as well as to defendants).

¶ 43    Even if the State had timely raised the issue, we would conclude that the argument lacks merit. Section 108B-12(c) permits "aggrieved person[s]," such as defendants, to file a motion to suppress the contents of an intercepted private communication, or evidence derived from it, on the grounds that (1) the communication was unlawfully intercepted, (2) the order of authorization or approval under which it was intercepted is insufficient on its face, or (3) the interception was not made in conformity with the order of authorization or approval, or at the time of the application there was not probable cause to believe that the aggrieved person was committing or had committed the offense to which the communication relates. 725 ILCS 5/108B-12(c) (West 2014).

¶ 44    The State argues that none of the three grounds for suppression applies. First, the State contends that all of the communications at issue were intercepted in accordance with the wiretap orders. Second, the State argues that the wiretap orders are not facially insufficient because they were entered by judges of the circuit court of Lake County and consisted of the information required by statute. Third, the State claims that "there is nothing to suggest that the interceptions were not in conformity with the orders or made without probable cause."

¶ 45    The State concludes that section 102B-12(c) does not authorize suppression on the ground that the underlying applications were facially invalid because the resulting orders were entered and executed in good faith. Defendants rely on the first two grounds of section 108B-12(c), arguing that, because the underlying applications were improper, the communications were unlawfully intercepted and the orders are insufficient on their face. We agree with defendants.

¶ 46    The purpose of the exclusionary rule is not to provide a constitutional right to an aggrieved party but, rather, to act as a deterrent against improper conduct by government agents. *United States v. Leon*, 468 U.S. 897, 906 (1984). The Supreme Court thus created the "good-faith exception" to the exclusionary rule, which allows the use of evidence where an officer is "acting as a reasonable officer would and should act in similar circumstances," albeit on a subsequently invalidated search warrant. (Internal quotation marks omitted.) *Leon*, 468 U.S. at 919-20.

¶ 47    Illinois has codified the good-faith exception in section 114-12(b)(1) of the Code of Criminal Procedure, which provides that, "[i]f a defendant seeks to suppress evidence because of the conduct of a peace officer in obtaining the evidence, the State may urge that the peace officer's conduct was taken in a reasonable and objective good faith belief that the conduct was proper and that the evidence discovered should not be suppressed if otherwise admissible." 725 ILCS 5/114-12(b)(1) (West 2014). Section 114-12(b)(4) specifically provides, however, that the good-faith exception "does not apply to unlawful electronic eavesdropping or wiretapping." 725 ILCS 5/114-12(b)(4) (West 2014). The plain and ordinary meaning of the statute prohibits the State from relying on law enforcement's purported good-faith conduct to excuse unlawful wiretapping.

¶ 48    The legislature's exclusion of unlawful wiretapping from the good-faith exception reflects the intent to specifically regulate this intrusive investigative technique. In *United States v.*

*Lomeli*, 676 F.3d 734 (8th Cir. 2012), the Eighth Circuit Court of Appeals explained why special regulation of law enforcement in this area is necessary. The *Lomeli* court addressed the validity of an interception order entered by a district court where the application was missing the order of special designation and the memorandum of authorization approving the application. The *Lomeli* court concluded that good-faith execution of the order did not excuse the omission where the application itself failed to properly identify either the person making the application or his or her authority to do so. *Lomeli*, 676 F.3d at 739-42.

¶ 49    The *Lomeli* court observed that, even though the good-faith doctrine adopted in *Leon* had been applied in the context of suppression motions filed under Title III (18 U.S.C. § 2518(10)(a) (2012)), it does not apply where the law enforcement officials are responsible for the error. *Lomeli*, 676 F.3d at 739-42. In factual contrast, in *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994), an officer left the trial judge's chambers believing, as did the judge, that the judge had approved the wiretap application and that the order had been entered, but the order was never signed. In *Moore*, the law enforcement officials "complied with the core statutory requirements of federal wiretap law in applying for and executing the wiretap orders" and it "was the judge, not the police officers, who made the critical mistake." (Internal quotation marks omitted.) *Lomeli*, 676 F.3d at 742 (quoting *Moore*, 41 F.3d at 376-77). The *Lomeli* court concluded that the exclusionary rule may not be relaxed under the doctrine of good faith where law enforcement has failed to adhere to the application authorization statute:

"We have already determined that the government failed to comply with the core statutory requirements of federal wiretap law and that the omission here was not merely a technical defect. Stated in juxtaposition with *Leon* jurisprudence, we hold that no wiretap applicant can, in good faith, rely upon a court order authorizing the wiretap when the applicant failed to comply with the edicts of the federal wiretap statute in procuring the order. The failure here thwarts the core purpose of the statutory scheme in place to regulate such extraordinary investigative techniques. To hold otherwise on these facts would prompt bad practices and reward those who routinely include mere boilerplate language in wiretap applications, which runs upstream from the carefully laid out statutory scheme. Without including the name of the authorizing DOJ official on wiretap applications, there can be no 'good faith' reliance under the statutory scheme carefully crafted by Congress to limit the use of these electronic interceptions. We will take no part in detracting from Congress's intent 'to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications.' [*United States v.*] *Giordano*, 416 U.S. [505, 515 (1974)]." *Lomeli*, 676 F.3d at 743.

¶ 50    *Lomeli* is directly on point. The prosecution may not rely on the good-faith doctrine to avoid the exclusionary rule when it procured the orders in violation of article 108B. See *People v. Edwards*, 337 Ill. App. 3d 912, 930 (2003) (the requirements of article 108B are intended to "provide for adequate judicial supervision and sufficiently protect a suspect's constitutional right to be free from unreasonable nonconsensual eavesdropping").

¶ 51                              D. Prospective or Retroactive Application

¶ 52    Anticipating our affirmance of the suppression orders in these cases and expressing concern at oral argument that our holding could have widespread ramifications on unrelated convictions under collateral review, the State argues that our decision would constitute a new

rule of law that should not be applied retroactively. Defendants again argue that the State has forfeited the argument by raising it for the first time on appeal. The State responds that the rules of forfeiture are a limitation on the parties, not on this court, and that the State would have had no reason to raise the issue of retroactivity below because "there was no new precedential law established" by the suppression orders in the trial court.

¶ 53    Indeed, there was no reason to consider retroactivity in the trial court or even now on appeal. The analysis set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989), adopted by the Illinois Supreme Court in *People v. Flowers*, 138 Ill. 2d 218, 237 (1990), and restated in *People v. Morris*, 236 Ill. 2d 345 (2010), shows why any determination regarding the retroactive application of our holding would be premature.

¶ 54    Under *Teague*, a judicial decision that establishes a new rule applies to all criminal cases pending on direct review. *People v. Smith*, 2015 IL 116572, ¶ 24. However, with two exceptions, the new rule will not apply retroactively to convictions that are already final when the new rule is announced. *Smith*, 2015 IL 116572, ¶ 24. The purpose of the *Teague* framework is to promote the government's interest in the finality of criminal convictions and to validate reasonable, good-faith interpretations of existing precedents, even though they are contradicted by later decisions. *Smith*, 2015 IL 116572, ¶ 24.

¶ 55    The *Teague* doctrine is tailored to the situation where a new rule is established in a previous case and a defendant in a collateral proceeding seeks to have the new rule applied to him. *People v. Price*, 2016 IL 118613, ¶ 21 (underlying the application of the *Teague* analysis is the notion that the new rule, had it been in effect at the time of trial, could have made a difference in the outcome); see, *e.g.*, *Teague*, 489 U.S. at 294 (petitioner for a writ of *habeas corpus*, who was convicted by an all-white jury, sought to benefit from the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), which was decided after his conviction became final); *Flowers*, 138 Ill. 2d at 234-35 (postconviction petitioner relied on *People v. Reddick*, 123 Ill. 2d 184 (1988), which held that conflicting jury instructions that failed to state the appropriate burdens of proof were unconstitutional, as the jury could not possibly convict the defendant of the lesser included offense); *Morris*, 236 Ill. 2d at 348-49, 355 (two postconviction petitioners who entered negotiated guilty pleas asserted that they were not properly admonished about mandatory supervised release and relied on *People v. Whitfield*, 217 Ill. 2d 177, 203 (2005), which was decided after the postconviction petitions were dismissed); *Smith*, 2015 IL 116572 (postconviction petitioner sought to apply holding of *People v. White*, 2011 IL 109616, which had been decided before petition was filed). Thus, whether our holding is suited to retroactive application is a question to be answered in a future collateral proceeding.

¶ 56    Further, it appears that the State is concerned with the effect of an affirmance of the trial court's ruling that an SA's ability to delegate wiretap-application authority is preempted by Title III. As explained, we need not decide that issue. Even if we were in a position to address retroactivity, our holding that the applications in these cases did not comply with article 108B and that suppression was appropriate under that statute (see 725 ILCS 5/108B-12(c) (West 2014)) does not constitute a new rule of law that would raise retroactivity concerns.

¶ 57                                III. CONCLUSION

¶ 58    The suppression orders entered in the circuit court of Lake County are affirmed.

¶ 59        Affirmed.