2020 IL App (2d) 160722
No. 2-16-0722
Opinion filed July 17, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1144 |
| TROYAN D. AMES, | ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Zenoff and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury trial, defendant, Troyan D. Ames, was convicted of unlawful possession of a firearm by a street gang member and aggravated unlawful use of a weapon. He received concurrent prison terms of six and nine years. His appeal presents the following issues for review: (1) whether the State's evidence established that defendant was a member of a street gang and (2) whether the trial court improperly enhanced the sentence for aggravated unlawful use of a weapon. For the reasons that follow, we vacate defendant's conviction of and sentence for unlawful possession of a firearm by a street gang member and reduce his sentence for aggravated unlawful use of a weapon from nine to seven years.

¶ 2                                   I. BACKGROUND

¶ 3    In July 2014, defendant and his two young children were passengers in a car driven by his wife when they were pulled over for a seat belt violation.  The Carol Stream police officer who stopped the car called for backup because he purportedly smelled cannabis and his Law Enforcement Agencies Data System (LEADS) check indicated that defendant was a "criminal gang member."  The police searched the car and discovered a loaded handgun in an inner pocket of a diaper bag.

¶ 4    According to the officers, defendant admitted that the gun was his and that he did not have a valid Firearm Owner's Identification (FOID) Card.  Defendant told the officers that he carried the gun for his family's protection, as he was a former gang member and had recently been attacked. His wife told the officers that defendant had been a Four Corner Hustler and had ceased his involvement with the gang a few years prior, when she agreed to marry him.

¶ 5    Defendant was arrested and charged by complaint with two counts of unlawful possession of a weapon by a felon and ticketed for a seat belt violation.  The complaint was superseded by a two-count indictment charging defendant with unlawful possession of a firearm by a street gang member (UPF) (720 ILCS 5/24-1.8(a)(1) (West 2014)) and aggravated unlawful use of a weapon (AUUW) (*id.* § 24-1.6).

¶ 6    A three-day jury trial commenced in January 2016.  The trial court admitted a certified record from the Illinois State Police indicating that defendant did not have a FOID card at the time of his arrest, and counsel for both parties stipulated that as of that time defendant was a convicted felon.  Other evidence adduced at trial related primarily to whether defendant was a street gang member at the time of his arrest.

¶ 7    Du Page County Police Detective Patrick O'Neil was qualified as a gang expert by the court.  O'Neil testified that the Four Corner Hustlers is a street gang faction that originated in

Chicago in the late 1950s or early 1960s and had "currently active" members throughout Cook and Du Page Counties, including in Chicago, Bellwood, and Maywood. When asked about the type of "criminal conduct of the Four Corner Hustlers," the "type of crimes or course of criminal conduct," O'Neil answered that he was personally aware of "prior investigations with the Four Corner Hustlers on possession of firearms, narcotics offenses to include heroin, and then aggravated batteries."

¶ 8 Based on the totality of the evidence he reviewed, O'Neil opined that defendant was a member of the Four Corner Hustlers at the time of the incident. That evidence included screenshots of photos posted on defendant's Facebook page that depicted images "indicative of gang lifestyle"—for example, money, a gangster character from a movie, and the words "Hustler Spirit"—photos of defendant's tattoos, which, O'Neil testified, were consistent with symbols used by members of the Four Corner Hustlers and street gang members generally; information compiled by the Bellwood and Carol Stream Police Departments that indicated that defendant was a member of the Four Corner Hustlers as recently as June 2012; and photos of graffiti found in the jail cell defendant occupied from July 2014 to July 2015 that depicted symbols and language used by members of the Four Corner Hustlers to represent their street gang and establish their "turf."

¶ 9 On cross-examination, O'Neil admitted that he did not know when any of the photos on defendant's Facebook page had been taken or posted, when defendant's tattoos were applied, who vandalized the jail cell or when, or whether defendant had taken the necessary steps to leave a street gang. James Buckardt, the sheriff's deputy who found and photographed the jail cell graffiti one year after defendant had occupied the cell, also testified that he had "no idea whether or not the graffiti in the cell was there prior to defendant being moved into that cell" and agreed that it was "possible" that the graffiti predated defendant's assignment to that cell.

¶ 10    The jury found defendant guilty of both offenses, and the trial court denied defendant's posttrial motion.  At sentencing, the presentence investigation report (PSI) revealed that defendant was convicted of conspiracy to commit first-degree murder in 2004 and UPF in 2010, both classified as Class 2 felonies when they were committed.  The trial court imposed the mandatory minimum prison term of six years for defendant's current UPF offense and a concurrent term of nine years for the AUUW offense. The court used the conspiracy-to-commit-first-degree-murder conviction both to classify defendant as a Class X offender and to elevate the sentence, apparently believing that it could avoid the prohibition against double enhancement by considering the specific "nature of the offense" to be "especially aggravating."   Defendant did not file a postsentencing motion.

¶ 11    This appeal ensued.  On May 13, 2019, we held the appeal in abeyance pending our supreme court's decision in *People v. Murray*, 2019 IL 123289.  The supreme court entered its decision on October 18, 2019, and we requested supplemental briefing addressing the decision's impact on this case.

¶ 12                                   II. ANALYSIS

¶ 13                A. Unlawful Possession of a Firearm by a Street Gang Member

¶ 14    Defendant argues that the State failed to prove him guilty UPF), because it presented insufficient evidence that the Four Corner Hustlers was a "street gang" as defined in section 10 of the Illinois Streetgang Terrorism Omnibus Prevention Act (Act) (740 ILCS 147/10 (West 2012)). Our review is governed by the following principles:

      "Where a criminal conviction is challenged based on insufficient evidence, a

      reviewing court, considering all of the evidence in the light most favorable to the

      prosecution, must determine whether any rational trier of fact could have found beyond a

reasonable doubt the essential elements of the crime. [Citations].” *Murray*, 2019 IL 123289, ¶ 19

"The right to due process, as guaranteed by the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2), safeguards an accused from conviction except upon proof beyond a reasonable doubt of every fact necessary to prove each element that constitutes the crime charged. [Citations.] An essential element of proof to sustain a conviction cannot be inferred but must be established. [Citation.] It is axiomatic that the State carries the burden of proving each element of a charged offense beyond a reasonable doubt. [Citation.]” *Id.* ¶ 28.

¶ 15 Defendant was charged with violating section 24-1.8(a)(1) of the Criminal Code of 2012 (Code). As we recently explained in *People v. Figueroa*, 2020 IL App (2d) 160650, ¶¶ 70-71, section 24-1.8(a)(1) provides:

"(a) A person commits unlawful possession of a firearm by a street gang member when he or she knowingly:

(1) possesses, carries, or conceals on or about his or her person a firearm and firearm ammunition while on any street, road, alley, gangway, sidewalk, or any other lands, except when inside his or her own abode or inside his or her fixed place of business, and has not been issued a currently valid Firearm Owner's Identification Card and is a member of a street gang[.]” 720 ILCS 5/24-1.8(a)(1) (West 2014).

The statute indicates that the term "street gang" has the meaning ascribed to it in section 10 of the Act. *Id.* § 24-1.8(c). Section 10 of the Act defines "streetgang" as

"any combination *** of 3 or more persons with an established hierarchy that, through its membership or through the agency of any member engages in a course or pattern of criminal activity." 740 ILCS 147/10 (West 2014).

"Course or pattern of criminal activity," in turn, means:

"2 or more gang-related criminal offenses committed in whole or in part within this State when:

(1) at least one such offense was committed after [January 1, 1993];

(2) both offenses were committed within 5 years of each other; and

(3) at least one offense involved the solicitation to commit, conspiracy to commit, attempt to commit, or commission of any offense defined as a felony or forcible felony under the Criminal Code of 1961 or the Criminal Code of 2012.

'Course or pattern of criminal activity' also means one or more acts of criminal defacement of property under Section 21-1.3 of the Criminal Code of 1961 or the Criminal Code of 2012, if the defacement includes a sign or other symbol intended to identify the streetgang." *Id.*

According to defendant, although O'Neil, as the State's expert, testified that the Four Corner Hustlers was a street gang, the State failed to establish that the Four Corner Hustlers engaged in a "course or pattern of criminal activity."

¶ 16    While this appeal was pending, our supreme court decided *Murray*, 2019 IL 123289. In reversing a decision of this court, a majority of the *Murray* justices agreed that expert testimony alone is insufficient to establish that an entity is a street gang; rather, an organization's "course or pattern of criminal activity" is an element of the offense that the State must prove. *Id.* ¶¶ 24, 53 (opinion of Neville, J., joined by Burke, J.); see also *id.* ¶ 63 (Kilbride, J., specially concurring,

joined by Karmeier, C.J.). In the absence of evidence of a course or pattern of criminal activity, these four justices agreed to reverse and vacate the defendant's conviction of unlawful possession of a firearm by a street gang member. *Id.* ¶ 53 (opinion of Neville, J., joined by Burke, J.); see also *id.* ¶ 68 (Kilbride, J., specially concurring, joined by Karmeier, C.J).

¶ 17 The State contends that the evidence presented regarding the defacement of defendant's jail cell with "Four Corner Hustlers graffiti" was sufficient to overcome its burden of showing that the Four Corner Hustlers engaged in a "course or pattern of criminal activity" and, therefore, met the legislatively mandated prerequisites for a "street gang."

¶ 18 According to Buckardt's testimony, he "found some graffiti" identifying the Four Corner Hustlers from the Bellwood area during a shakedown of the jail cell defendant occupied for about a year before his trial. Buckardt admitted, however, that he had "no idea whether nor not the graffiti in the cell was there prior to [defendant's] being moved into that cell" and acknowledged that it was "possible" that the graffiti was present prior to defendant's assignment to that cell. No witness testified as to "who created the graffiti or when it was created." See *id.* ¶ 51 (opinion of Neville, J., joined by Burke, J.). The State nevertheless asserts that the evidence was "sufficient for the jury to infer that defendant created the graffiti that was found in his cell."

¶ 19 In *Murray*, the supreme court explicitly rejected the same inference argument:

"The State did not prove 'one or more acts of criminal defacement of property' when it failed to present a witness who testified as to who created the graffiti or when it was created. When the State's witnesses failed to testify that they were present when the property was defaced, the jury had no evidence from which it could infer that the defendant defaced the property. In addition, because a 'course or pattern of criminal activity' is an element of

the offense, which must be established and cannot be proved by inference [citation], the evidence was insufficient to prove defendant guilty of the offense." *Id.*

¶ 20    We conclude that the State failed to prove that the Four Corner Hustlers engaged in a "course or pattern of criminal activity" and, therefore, failed to prove that defendant was a member of a "streetgang" under the Act at the time of his arrest. Accordingly, the State failed to prove beyond a reasonable doubt that defendant was guilty of UPF.

¶ 21    The State contends that defendant's conviction of UPF should be vacated without prejudice to retrial as to that offense. According to the State, a previous decision of this court, *People v. Jamesson*, 329 Ill. App. 3d 446, 460-61 (2002), was in effect at the time of defendant's trial and held that expert opinion was sufficient to demonstrate that an organization qualified as a "street gang," without testimony as to specific dates or instances of criminal activity. Although the supreme court overruled *Jamesson* in *Murray*, 2019 IL 123289, ¶ 42, the State maintains, without citing authority, that its "ability to retry defendant for his UPF offense should not be compromised by their [*sic*] adherence to existing precedent." The relevant authority, however, indicates otherwise: "Generally, when a court issues an opinion, its decision is presumed to apply both retroactively and prospectively." *Tzakis v. Berger Excavating Contractors, Inc.*, 2019 IL App (1st) 170859, ¶ 32 (setting forth exceptions to this presumption, none of which is applicable here (citing *Tosado v. Miller*, 188 Ill. 2d 186, 196 (1999))); see also *People v. Allard*, 2018 IL App (2d) 160927, ¶ 54 (with two exceptions not applicable here, a judicial decision that establishes a new rule applies to all criminal cases pending on direct review (citing *People v. Smith*, 2015 IL 116572, ¶ 24)).

¶ 22    The State further maintains that the prohibition against double jeopardy would not bar a retrial, because the expert opinion in this case "lacks the proper foundation" and, therefore, was

"improperly admitted." The State cites generally, and erroneously, to *Murray* for this proposition. See *Murray*, 2019 IL 123289, ¶ 59 (Kilbride, J., specially concurring, joined by Karmeier, C.J.) ("The critical question here is not the propriety of admitting the expert testimony but whether that testimony is sufficient to establish part of the State's *prima facie* case.") Under *Murray*, therefore, O'Neil's testimony was properly admitted but insufficient to prove the "course or pattern of criminal activity" element of the UPF offense. We determine that jeopardy has attached and that defendant may not be retried on this charge.

¶ 23          B. Double Enhancement: Aggravated Unlawful Use of a Weapon

¶ 24    Defendant argues that his nine-year sentence for aggravated unlawful use of a weapon "reflects an impermissible double enhancement" because the trial court used one of his previous Class 2 felonies to both elevate his AUUW conviction from a Class 4 offense to a Class 2 offense under section 24-1.6(d)(3) of the Code (720 ILCS 5/24-1.6(d)(3) (West 2014)) and to subject him to Class X sentencing under section 5-5-3(c)(2)(F) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(2)(F) (West 2014)). See *People v. Gonzalez*, 151 Ill. 2d 79, 84-85 (1992) ("There is a general prohibition against the use of a single factor both as an element of a defendant's crime *and* as an aggravating factor justifying the imposition of a harsher sentence than might otherwise have been imposed." (Emphasis in original.)). We review *de novo* an allegation of a double enhancement. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004).

¶ 25    Defendant recognizes that this error has been forfeited because it was not raised below. Defendant argues, and the State agrees, that an issue of double enhancement is reviewable under the second prong of the doctrine of plain error. *People v. Owens*, 377 Ill. App. 3d 302, 304 (2007). The State also agrees with defendant that this case is nearly identical to *Owens*, where the court held that the circuit court had committed second-prong plain error by using the same Class 2 felony

twice to subject an AUUW defendant to Class X sentencing. *Id.* at 304-06. Finally, the State concedes that defendant's sentence for AUUW should be reduced to seven years.

¶ 26 We agree that the analysis in *Owens* is applicable and persuasive. Accordingly, pursuant to our powers under Illinois Supreme Court Rule 615, we reduce defendant's AUUW sentence from nine to seven years. See Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967) (reviewing court may reduce punishment imposed by trial court).

¶ 27                                    III. CONCLUSION

¶ 28 For the reasons stated, we vacate defendant's conviction of and sentence for UPF and reduce his sentence for aggravated unlawful use of a weapon AUUW from nine to seven years.

¶ 29 Vacated in part, sentence reduced.

---

**No. 2-16-0722**

---

| | |
|---|---|
| **Cite as:** | *People v. Ames*, 2020 IL App (2d) 160722 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 14-CF-1144; the Hon. Robert A. Miller, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and April D. Kentala, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Edward R. Psenicka, Assistant State's Attorneys, of counsel), for the People. |

---